**Jiamu WANG, Petitioner,**

v.

**IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.**

No. 02–72176.
Agency No. A72-693-706.

United States Court of Appeals,
Ninth Circuit.

Submitted Aug. 13, 2003.*

Filed Dec. 17, 2003.

---

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. 34(a)(2).

Allan A. Samson, San Francisco, California, for the petitioner.

Donald A. Couvillon, Office of Immigration Litigation, Dept. of Justice, Washington, DC, for the respondent.

Before: WALLACE, HALL, and O'SCANNLAIN, Circuit Judges.

WALLACE, Senior Circuit Judge:

Jiamu Wang, a native and citizen of the People's Republic of China, petitions for review of a Board of Immigration Appeals (Board) order denying his application for asylum and withholding of deportation. We have jurisdiction pursuant to 8 U.S.C. § 1105a(a), *as amended by* the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 § 309(c). We conclude that the Board did not commit reversible error, and we deny Wang's petition for review.

I.

Around August 21, 1993, Wang, a forty-five-year-old male, entered the United States on a visitor's visa and petitioned for asylum. The Immigration and Naturalization Service (INS) denied Wang's asylum petition in 1993 and again in 1995. Wang has renewed his asylum bid in these proceedings. His current petition for asylum and withholding of deportation rests upon his claim that he fears future persecution in China due to past political activities and because he escaped forced sterilization.

Wang alleges that during the summer of 1989 he was employed by the Hang Cheng Machine Electrical Equipment Co., in Changle City, Fujian Province. Upon learning that government authorities were using force to quell the Student Democratic Movement in Beijing, Wang allegedly orchestrated a strike among co-workers in his own factory on June 3, 1989. As punishment for his participation in the strike, Wang states that government security officials arrested him a few months later at his home and placed him in prison where he received several severe beatings. Wang testified that one week after his arrest, the government issued an order for Wang to be forcibly sterilized, but he managed to escape his captors en route to the hospital. Wang testified that he later fled

to Long Yan District, a two-day journey by train from Changle, where he acquired employment as a common laborer.

In August 1992, Wang abandoned China for Vietnam. With the aid of relatives living abroad, Wang secured a visitor's visa and passage to the United States. Wang's visa expired on February 20, 1994, and an Order to Show Cause issued on January 3, 1995.

At his removal hearing, Wang admitted the truthfulness of the factual allegations contained in the Order to Show Cause and conceded deportability. As relief from deportation, he submitted an application for asylum pursuant to Immigration and Nationality Act (INA) § 208, 8 U.S.C. § 1158, and with- holding of deportation pursuant to INA § 243(h), 8 U.S.C. § 1253(h). The Immigration Judge (IJ) denied Wang's application, concluding that Wang's documentary and testimonial evidence lacked credibility. The Board affirmed the IJ's decision without opinion.

## II.

■ To qualify for asylum, Wang must demonstrate a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). In seeking withholding of deportation, he must meet an even higher burden of proof: "an alien must demonstrate that it is more likely than not that he would be subject to persecution on one of the specified grounds." *Al–Harbi v. INS*, 242 F.3d 882, 888(9th Cir. 2001) (internal quotations omitted).

■ Wang was denied asylum and withholding of deportation based on a finding that his evidence of persecution is not credible; therefore, we review this finding for substantial evidence. *Gui v. INS*, 280 F.3d 1217, 1225 (9th Cir.2002). Although this standard of review counsels great deference to the Board's adverse credibility determinations, the Board must nevertheless provide "a legitimate articulable basis" for challenging Wang's credibility, and it must "offer a specific, cogent reason for any stated disbelief." *Shah v. INS*, 220 F.3d 1062, 1067 (9th Cir.2000) (internal quotation marks and citations omitted). Our task on this petition is limited to deciding whether the Board has satisfied this basic "substantial evidence" threshold.

■ Where, as here, the Board affirms an IJ's denial of asylum and withholding of deportation without opinion, we review the IJ's decision as though it were the Board's. *Lata v. INS*, 204 F.3d 1241, 1244 (9th Cir.2000); *see also Falcon Carriche v. Ashcroft*, 335 F.3d 1009, 1014 (9th Cir. 2003) ("The practical effect of this regulatory scheme is that, unless the [Board] opts for three-judge review, the IJ's decision becomes the [Board]'s decision.").

## III.

■ The IJ based her adverse credibility finding on perceived inconsistencies within Wang's testimony, inconsistencies between his testimony and his documentary evidence, and inconsistencies between his testimony and that of his brother, Wang Jia Xing. The IJ's adverse credibility determination may not rest on incidental misstatements that do not go to the "heart of [Wang's] asylum claim." *Ceballos–Castillo v. INS*, 904 F.2d 519, 520 (9th Cir.1990). "Generally, minor inconsistencies and minor omissions relating to unimportant facts will not support an adverse credibility finding." *De Leon-Barrios v. INS*, 116 F.3d 391, 393 (9th Cir.1997).

### A.

Wang's documentary evidence includes a marriage certificate, birth certificates for two children, a notarial certificate documenting his own birth, a report of his

wife's sterilization, and an employment termination letter. The IJ questioned the documents' authenticity, observing that the INS's forensic analysis was unable to authenticate any of the documents. The IJ also cited a 1995 Department of State report stating that documentation from China and Southeast Asia is "marked by widespread fabrication and fraud." Bureau of Democracy, Human Rights, and Labor, U.S. Dep't of State, *China— Country Conditions and Comments on Asylum Applications* 13 (Dec. 1, 1995) ("A Chinese official with responsibilities relating to notarial offices in Fujian Province last year told our Consulate that no reliable documents existed to confirm information...."). The IJ concluded from the forensic study and State Department Report that "it is difficult to know whether [Wang's] documents should be given any weight" and admitted the documents only for the limited purpose of evaluating Wang's credibility.

■ To the extent that the IJ based her adverse credibility finding upon Wang's failure to supply affirmative authentication for the documents, her finding does not meet our substantial evidence standard. Mere failure to authenticate documents, at least in the absence of evidence undermining their reliability, does not constitute a sufficient foundation for an adverse credibility finding. In *Shah v. INS*, 220 F.3d 1062(9th Cir. 2000), we concluded:

> The [Board]'s suggestion that [documents] submitted as evidence are unreliable or forgeries is an impermissible basis for deeming them not credible. There is no evidence in the record to indicate that the [documents] are anything but what [they purport to be].... We cannot uphold an adverse credibility finding that rests on conjecture and speculation.

*Id.* at 1071. Here, admittedly, the INS did not rest solely on conjecture and specula-tion; instead it submitted the documents to experts to determine authenticity. However, although these experts could not discern whether the documents were authentic, they did not find them forgeries either. Such a finding might constitute some additional evidence, but our prior decisions dictate that alone it is not enough. It may be suspicious when forensic experts cannot determine authenticity, especially given the State Department's general observations regarding the high incidence of document fabrication in China, yet this alone cannot constitute a basis for an adverse credibility finding. *Id.* Thus, the INS's failure to authenticate Wang's documents does not provide a reasonable basis for concluding that these documents are anything other than what they purport to be.

■ The IJ expressed concern that the dates provided in the marriage and birth certificates differed from those offered in Wang's testimony. Nevertheless, these so-called "minor discrepancies" do not justify an adverse credibility finding. *Chen v. INS*, 266 F.3d 1094, 1100 (9th Cir.2001), vacated, 537 U.S. 1016, 123 S.Ct. 549, 154 L.Ed.2d 423 (2002) (mem.), reversal reaff'd, 326 F.3d 1316 (2003); *Shah*, 220 F.3d at 1068; *Damaize–Job v. INS*, 787 F.2d 1332, 1337 (9th Cir.1986). We have speculated in our prior decisions that such discrepancies could have been caused by the mistakes of typists, clerks, or translators. Given our assumptions that these minor discrepancies can be attributed to causes other than a deliberate attempt to enhance the petitioner's persecution claims, we do not allow the Board to afford these inconsistencies conclusive weight in assessing a petitioner's credibility. *Shah*, 220 F.3d at 1068. Therefore, while suspicious, these inconsistencies alone cannot form the basis for an adverse credibility finding.

■ The IJ also found reason to question Wang's credibility based on the birth certificates of his two children and his wife's sterilization record. Both birth certificates had been issued by hospitals, but Wang testified that his wife gave birth to their children at home. Finding this apparent inconsistency "troublesome," the IJ complained that she had "no way of knowing why a hospital would give a certificate for a birth with which it had no involvement." Wang had an answer, however: he asserted that Chinese hospitals issue birth certificates for children born at home. In addition to the birth certificates, the IJ challenged the authenticity of his wife's sterilization record because it lacked dates and other details.

Such problems with these documents are indeed "troublesome," as the IJ said, and may be suspicious, but the relevant question is whether they form a reasonable basis upon which to contest Wang's credibility. We conclude they do not. The record does not furnish any evidence that Chinese hospitals do not provide birth certificates for all births, nor does it show that authentic Chinese sterilization records ordinarily supply the dates and other details omitted in Wang's document. While we understand the IJ's suspicion, her basis for questioning these documents "amounts to nothing more than [a] subjective view of what [these documents] would look like." *Id.* at 1071. Our substantial evidence standard requires more for an adverse credibility finding.

### B.

■ The IJ also cited several perceived inconsistencies and implausibilities within Wang's testimony as grounds for an adverse credibility finding. First, the IJ doubted Wang's allegation that he had organized a workers' strike in Guan Dong and Fujian on June 3, 1989, in response to violence in Beijing:

[T]he events in Fujian were . . . confined to a small group of intellectuals and students with very little participation by workers or other citizens. It seems highly unlikely that this worker, although a vocal and outspoken critic of some of the policies in the company, would have been subjected to the type of arrest and persecution he has described.

The IJ pointed to evidence that the "crackdown" in Fujian was "relatively mild[,] . . . resulted in few arrests," and apparently reached its "climax" on June 4, 1989, the day after Wang claimed to have led his own strike. The IJ also expressed doubt concerning Wang's asserted ability to evade arrest for several months after the alleged June 3 strike.

The IJ's reasoning with respect to Wang's purported involvement in the June 1989 demonstrations strikes us as too speculative. Although Wang may have been a relatively minor figure in the tumultuous events of June 1989, how can it be said that his arrest was less likely—particularly if, as he claims, he established himself as a local strike leader in Changle? If the strike allegedly occurred before the June "climax," what does that prove? Wang and his brother both testified that the government used violence against student demonstrators before June, and there is no record evidence to rebut this testimony. The IJ's speculation regarding China's use of force against demonstrators prior to June is no substitute for substantial evidence. *Singh v. INS,* 292 F.3d 1017, 1020–21, 1024 (9th Cir.2002) (rejecting similar speculation).

■ In addition, the IJ expressed skepticism that authorities in Wang's community actually enforced China's "one-child policy" as vigorously as Wang claimed. For example, the IJ considered it "extremely telling" that Wang's brother:

admitted the fact that he had three children, and ... it was not until the wife became pregnant with the fourth that he, himself, was required to be sterilized. ... [I]t seems highly unlikely in the same community that the public security bureau would target one [individual] ... for a violation of the one couple, one child policy, but not target someone else of the same family.

This selective enforcement may be suspicious, but Wang's brother stated that Wang evaded sterilization by hiding from government authorities in less accessible "hilly regions." The IJ did not respond to this explanation. Instead, she came to the above conclusion on the unlikelihood of selectively enforcing the "one-child policy" by way of conjecture and speculation. *See Garrovillas v. INS*, 156 F.3d 1010, 1013 (9th Cir.1998) (concluding there was no substantial evidence when the Board "did not comment on [petitioner's] explanation, nor suggest any reason that it found his explanation not credible").

■ However, the third and perhaps most troubling aspect of Wang's testimony cited by the IJ does provide substantial evidence to support an adverse credibility finding: Wang's unlikely explanation for the government's alleged decision to impose forced sterilization. Wang initially testified that he was targeted for sterilization because his wife gave birth to a second child and she was physically unfit to undergo a sterilization procedure herself. When confronted on cross-examination with the fact that his second child was born in October 16, 1990—well after the alleged sterilization—Wang changed course:

Q: ... So, if officials wanted to sterilize either you or your wife after the birth of your second child it could not have been on December 7, 1989, can you explain this?

A: Well, according to Chinese law one child is enough for the family.

Q: But the second child hadn't already been born.

A: Well, they say one is enough for you.

Q: ... So, are you now saying that they attempted to sterilize you before your wife gave birth to the second child?

A: Yes.

Later in the same hearing, the INS gave Wang a second chance to explain this apparent inconsistency:

Q: [A]ccording to the birth certificate your second child wasn't even born yet, at the time of this demand in December of 1989.

A: Yeah, but they allow you to have one.

This evasiveness was compounded one week later when Wang's brother was to testify and the IJ give her decision. But in addition, Wang then presented a new story, testifying for the first time that his wife delivered a stillborn daughter in 1988. According to this new account under oath, local authorities believed that Wang's deceased child was still alive and that Wang and his wife had hidden the child with relatives in order to escape sterilization. Wang explained his earlier failure to mention the stillborn child as the product of a Chinese superstition or custom, according to which public discussion of a stillborn child may cause the child to "grow and somehow do harm to your family—will devour your family."

■ An asylum seeker's "obvious evasiveness" may be enough to uphold an IJ's adverse credibility finding. *See Turcios v. INS*, 821 F.2d 1396, 1400 (9th Cir.1987) (stating that "evasive testimony" may be "deserving of a negative credibility finding"). Wang was given two opportunities to explain the all-too-apparent contra-

diction in his testimony. Then a week later he suddenly testified about the stillborn child. While he claimed he did not mention the stillbirth earlier due to a superstition, apparently this superstition did not prevent him from speaking of the stillbirth one week later. It strains credulity to believe that Wang would fail to mention in either his asylum applications or his previous sworn testimony the alleged death of a stillborn child—the very incident that supposedly formed the basis for the Chinese government's alleged sterilization attempt. *Cf. Alvarez–Santos v. INS,* 332 F.3d 1245, 1254 (9th Cir.2003) (affirming an adverse credibility finding where a petitioner failed to mention "a dramatic incident in which he was attacked, stabbed, and fled to the mountains ... [until] reminded of it at the conclusion of his testimony"). Thus, Wang's two testimonial narratives provide a "specific and cogent" reason for discrediting his testimony. *Id.*

The subsequent testimony of Wang's brother does not invalidate the IJ's credibility finding. Wang's brother testified that his wife advised him of the child's death two or three months after it occurred. True, the IJ only referred to Wang's brother's knowledge with respect to the timing of the birth and not the details of the birth event itself. *See Vera–Villegas v. INS,* 330 F.3d 1222, 1231–32 (9th Cir.2003) (holding that corroborating witness testimony need not be complete or detailed to withstand adverse credibility analysis). It is clear, though, that the IJ assessed the entire testimony of Wang's brother; the IJ stated that "[Wang's brother] had very little to add concretely to this case" and that "[h]is knowledge was really inadequate to address the issue of this child."

■ The record before us does not cause us to reject the IJ's adverse credibility determination of Wang. "Under[our]

'extremely deferential' standard, we 'must uphold the [Board]'s findings unless the evidence presented would *compel* a reasonable finder of fact to reach a contrary result.'" *Monjaraz–Munoz v. INS,* 327 F.3d 892, 895 (9th Cir.2003) (emphasis in original), *quoting Singh–Kaur v. INS,* 183 F.3d 1147, 1149–50 (9th Cir.1999) (internal quotations and citations omitted). *See Abovian v. INS,* 219 F.3d 972, 984 (9th Cir.2000) (Wallace, J., dissenting) (citing language similar to that of *Monjaraz–Munoz* and reminding the majority that the substantial evidence standard of review requires courts to be "extremely deferential").

C.

■ We now turn to the evidence of adverse credibility in various inconsistencies between Wang's testimonial and the documentary evidence. A notarial certificate, which contains Wang's photograph, was issued in Changle on March 23, 1992. Wang testified, however, that he fled Changle for Long Yan District years before this certificate issued. Wang also testified that he never returned to Changle after his departure in 1989. Wang did not explain how he managed to obtain the notarial certificate from Changle County while maintaining continuous residence in Long Yan District. This contradiction "goes to the heart" of Wang's asylum claim, because it suggests that Wang did not, as alleged, conceal himself from Changle authorities during this interval in order to avoid arrest.

More important, however, is Wang's notice of employment termination. The termination notice is dated November 20, 1990—a full seventeen months after Wang allegedly stopped working. Rather than challenge the date's accuracy, Wang emphatically maintained that the recorded date was no mistake and asserted that

Chinese law required his employer to continue to pay him until his absence became sufficiently long in duration to justify his dismissal. Wang testified that officials severed his pay only because he "stayed away from work for too long a period" after the strike, and he specifically denied the suggestion that his termination was directly linked to either his participation in the strike or his subsequent arrest. Wang attributed the extraordinary delay in his severance to Fujian's torpid regional bureaucracy; officials at the factory allegedly could not fire him or sever his pay until specifically authorized by higher government authorities.

The IJ found Wang's attempts to harmonize his arrest narrative with his termination notice patently implausible. The notion that the Chinese government would permit a known fugitive to collect pay for seventeen months in remuneration for work he did not perform strains credulity. Casting further doubt on Wang's credibility is the termination notice's specific language, which declares that Wang's employment was terminated not because he stayed away from work, but rather because he "was the head of [a] strike in June 1989 ... [and] refused to be sterilized after having one more child." The notice makes no mention of Wang's lengthy absence from work as a ground for his dismissal. If, as Wang insists, Chinese law prohibited employers from ceasing to pay workers except in cases where workers failed to appear for a prolonged period, one would expect the notice of termination to make reference to Wang's absence rather than to his political activities. That the notice does not even mention Wang's absence as a ground for dismissal may not prove adverse credibility beyond a reasonable doubt, but it does provide substantial evidence to render Wang's account of his arrest and near-sterilization significantly less believable.

## D.

Speculation and conjecture may not "substitute for substantial evidence," but an IJ need not ignore palpable inconsistencies in a petitioner's testimonial and documentary evidence that directly undermine his allegations of persecution. When an IJ provides a specific reason for challenging a witness's credibility, her judgment merits deference as long as (1) "the reasoning employed by the IJ is [not] fatally flawed," and (2) the reason is "substantial and bear[s] a legitimate nexus to the finding." *Gui*, 280 F.3d at 1225, *quoting Osorio v. INS*, 99 F.3d 928, 931 (9th Cir.1996), *and Mosa v. Rogers*, 89 F.3d 601, 604 (9th Cir.1996). With respect to Wang's evasiveness and the new story one week later, and the testimony concerning the employment termination notice, the IJ's reasoning was not "fatally flawed." The IJ's reasons for discounting Wang's testimony are "substantial and bear a legitimate nexus" to her adverse credibility finding.

Because we are not convinced that "the evidence presented would *compel* a reasonable finder of fact to reach a contrary result," we must, as discussed earlier, honor the Board's adverse credibility finding. *Singh–Kaur*, 183 F.3d at 1149–50 (emphasis in original, internal quotation marks and citations omitted).

## IV.

Notwithstanding the numerous inconsistencies in his testimonial and documentary evidence, Wang contends that the "totality" of the evidentiary record establishes his eligibility for relief. He suggests that our rejection of part of the IJ's adverse credibility analysis should compel the conclusion that Wang's persecution narrative is credible. He is wrong for two reasons.

First, the items which in part III.A of this opinion we held to be insufficient in themselves to support an adverse credibility finding were clearly suspicious, and if anything, their aggregation cuts the other way: the totality of suspicious acts might add up to a sufficient basis for an adverse credibility finding. However, we need not reach this issue to dispose of Wang's argument. This suspicious evidence does not furnish sufficiently compelling evidence of *favorable* credibility. On the contrary, it is difficult to conceive that documents and testimony containing manifest inconsistencies would exhibit the tokens of affirmative reliability necessary to overturn an adverse credibility determination arrived at by another path.

Second, whether we have rejected some of the IJ's grounds for an adverse credibility finding is irrelevant. So long as one of the identified grounds is supported by substantial evidence and goes to the heart of Wang's claim of persecution, we are bound to accept the IJ's adverse credibility finding. *See, e.g., Hakeem v. INS*, 273 F.3d 812, 816 (9th Cir.2001) (affirming the Board's adverse credibility finding notwithstanding the invalidity of a key ground asserted by the Board).

PETITION DENIED.