Gurjit KAUR, Petitioner,

v.

Michael B. MUKASEY,* Attorney General, Respondent.

No. 04–71978.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 24, 2007.

Filed March 5, 2008.

Bea, Circuit Judge, filed an opinion concurring in part, dissenting in part, and concurring in the judgment.

George T. Heridis, Esq., Rai & Associates, PC, San Francisco, CA, for Petitioner.

Regional Counsel, Western Region Immigration & Naturalization Service, Laguna Niguel, CA, Oil, DOJ—U.S. Department of Justice Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before: GIBSON,** BERZON, and BEA, Circuit Judges.

MEMORANDUM ***

Gurjit Kaur, a native and citizen of India, petitions for review of an order of the Board of Immigration Appeals denying her

---

* Michael B. Mukasey is substituted for his predecessor, Alberto R. Gonzales, as Attorney General of the United States, pursuant to Fed. R.App. P. 43(c)(2).

** The Honorable John R. Gibson, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

*** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

application for asylum, withholding of removal, and protection under the Convention Against Torture. Kaur contends that the Immigration Judge's negative credibility finding was not supported by substantial evidence in the record. We deny the petition.

Where the BIA affirms the IJ summarily, as here, we review the IJ's opinion as if it were the decision of the BIA. *Singh v. Gonzales,* 491 F.3d 1019, 1023 (9th Cir. 2007). We review the IJ's findings of fact under the substantial evidence standard, which means that "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see INS v. Elias–Zacarias,* 502 U.S. 478, 481 n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). An IJ must articulate the basis for his factual findings, and an adverse credibility finding, in particular, must be explained by specific, cogent reasons bearing a "legitimate nexus" to the finding. *Kumar v. Gonzales,* 444 F.3d 1043, 1050 (9th Cir.2006). Moreover, in cases such as this one, in which the application for asylum was filed before May 11, 2005, the effective date of the Real ID Act of 2005, Pub.L. No. 109–13, Div. B, 119 Stat. 302, 303, an inconsistency in the applicant's testimony, documents, or prior statements can support an adverse credibility determination only if the inconsistency goes to the heart of the applicant's claim. *See Wang v. INS,* 352 F.3d 1250, 1253 (9th Cir.2003); *see also* 8 U.S.C. § 1158(b)(1)(B)(iii) & note (stating different standard for cases in which an asylum application was filed after effective date of Real ID Act). If the IJ gives some grounds for the adverse credibility determination that are not deemed specific, cogent, or logically connected to his conclusion, the IJ's finding will nevertheless be upheld if any one of the bases for the finding is valid. *Wang,* 352 F.3d at 1259.

The IJ's negative assessment of Kaur's credibility was based on a number of inconsistencies between Kaur's testimony and supporting documents, implausibilities, and her admitted untruthfulness in earlier dealings with United States immigration authorities. We conclude that two of the bases for the IJ's findings provide substantial evidence for the adverse credibility finding, so we limit our discussion to those two.

First, the IJ found that Kaur's statement in her declaration that, after she fled from her village, she lived in "different places with relatives until I fled from India," is inconsistent with her testimony at the hearing that she lived with one aunt for three months and then stayed at a hotel in Delhi for about three months. This inconsistency casts doubt on Kaur's claim that she was forced to flee her village due to persecution. Kaur's telling two different stories about where she fled and hid could legitimately lead the IJ to question whether she was indeed forced to flee and hide.

Second, there is evidence that when Kaur was apprehended after having crossed the frontier from Canada into the United States, she did not tell authorities that she feared persecution and instead told them that she intended to do sightseeing in Canada. The record contains a Notice of Rights form, which indicates that the form was read to Kaur in her native language of Punjabi. Kaur signed it and initialed the box that said she sought an immigration hearing, but there is no check mark in the box that says "I believe I face harm if I return to my country." There was also a Record of Deportable/Inadmissible Alien form, recounting Kaur's interview with the immigration officials, which we will refer to as the interview statement. The interview statement indicates that

Kaur was interviewed with the help of a translator and that she said that she "was going to see the sights of Canada," but was robbed of her identification in Toronto. When the government's counsel asked at the hearing about her failure to report that she feared persecution, she said the immigration official never asked whether she faced harm. Later, however, she made statements indicating she would not have told even if asked: she said that she did not tell the border patrol that she feared returning to India because the agent who helped her escape had told her not to tell American authorities the truth. She then added that she did not tell because "I was thinking perhaps the police here would also trouble me the same way like they do in India." When asked at the hearing whether she told the immigration authorities that she had come to Canada to see the sights, her answer was equivocal: "No, the agent had told me that." This answer would support a conclusion that she admitted saying it, but said it only because her agent told her to. She also admitted that she told the authorities that she did not have identification with her because it had been stolen in Toronto and that this statement was untrue.

We have held that prior inconsistent statements to immigration authorities may not be the basis for adverse credibility determinations if it is unclear whether such statement was really made in light of the following factors: (a) the person taking the prior statement did not testify at the hearing about the circumstances of the statement; (b) the previous interview was conducted in a language in which the applicant was not proficient; (c) the form of the prior inconsistent statement was a summary rather than a transcript; (d) the applicant was not given the chance to comment on the report of the inconsistent statement at the hearing before the IJ; or (e) the prior inconsistent statement was not under oath. *Singh v. Gonzales*, 403 F.3d 1081, 1087–90 (9th Cir.2005) (statements made at asylum interview were not substantial evidence supporting adverse credibility determination).

In this case, we have both the interview statement and the Notice of Rights form. The immigration official who completed the forms did not testify at the hearing, and the interview was summarized, rather than transcribed, but both forms indicate that the official communicated with Kaur in her language, and Kaur testified that there was a Punjabi interpreter. The Notice of Rights form was certified.

Moreover, at the hearing Kaur was asked about the interview statement extensively, and she did not claim that it was an inaccurate version of what she said at the interview. Instead, she offered two different reasons for why she did not say she feared persecution: at one point she said the immigration official did not ask her about whether she feared harm in India, but on being asked the same question again, she said that she relied on her agent's advice not to tell the truth and that she was too frightened to reveal the truth. This change in explanation could be viewed as an implicit admission that she had in fact been asked about fear of returning to India; it would be odd to explain one's failure to answer a question that had never been asked by saying that one had resolved to lie. A finder of fact could conclude that a person would not give the second explanation if the first were true. Moreover, Kaur did not dispute that she had told the border patrol that her reason for coming to Canada was to "see the sights." One could certainly infer that this explanation was inconsistent with her current story that she came to Canada because she was fleeing for her life.

The IJ was obliged to consider Kaur's explanations, *see Garrovillas v. INS,* 156 F.3d 1010, 1013–14 (9th Cir.1998), and the record indicates she did so. At the hearing, the IJ pointed out the problem with multiple explanations by asking Kaur which of two of the explanations she offered was the real one; Kaur replied that both were. The hearing record shows that the IJ actively considered Kaur's explanations and gave her the chance to allay the IJ's concerns. In her decision, the IJ pointed to Kaur's failure to reveal the persecution and the inconsistency of her explanation with the immigration official's assertion that the Notice of Rights was read to Kaur in Punjabi. In reference to this and a number of other inconsistencies she found in Kaur's testimony, the IJ stated that Kaur had not "convincingly address[ed] the discrepancies." The dissent contends that this did not constitute a sufficient reason for rejecting Kaur's explanations, *infra* at 632–33 (relying on *Garrovillas,* 156 F.3d at 1014). The opinion at issue in *Garrovillas* gave no reason at all for rejecting an explanation that this court described as "plausible." 156 F.3d at 1013–14. In contrast, in this case the IJ considered Kaur's explanations and dismissed them as not convincing. Moreover, Kaur's efforts to explain away the border statements resulted in two explanations that undercut each other, and she never denied saying that the purpose of her trip was sightseeing. It would be pointless to require a minute analysis of why the IJ found these shifting explanations unconvincing; no further elaboration of the IJ's reasoning was necessary.

We conclude that the IJ sufficiently probed the circumstances of the border interview and statements in order to permissibly rely on those statements in making her credibility determination. Accordingly, this record presents substantial evidence for the IJ to conclude that Kaur had a chance to tell authorities why she had come to North America, that she failed to say anything about persecution, and that she gave a reason, sightseeing, that was at odds with her current claim that the purpose of her trip was a deadly serious one. The IJ's reliance on (1) the inconsistency about where Kaur fled to in India and (2) the statements in the two forms and on Kaur's statement about sightseeing, formed a specific, cogent explanation for her decision not to believe Kaur. The inconsistencies went to the heart of Kaur's claim of persecution.

Because all of Kaur's claims for relief depended on her own testimony about the same events, once we have upheld the IJ's adverse credibility decision, it follows that the IJ did not err either in finding that Kaur had not proved she was eligible for asylum or in denying withholding of removal or relief under the Convention Against Torture.

Kaur argues that the IJ erred in excluding affidavits because they were not authenticated. She argues that it is difficult for asylum applicants to get such documents. Kaur submitted copies of the documents obtained from her mother, and she said that the originals had also been mailed but had not arrived. Kaur did not claim that the originals were unavailable to her, but rather that she had not obtained them in time for the hearing. At any rate, the IJ did not base her decision on lack of corroborating evidence, so a different decision on receiving the documents would not have led to a different result.

We deny the petition for review. The temporary stay of removal entered on July 16, 2004 will remain in place until this court issues its mandate.

PETITION FOR REVIEW DENIED.

BEA, Circuit Judge, concurring in part, dissenting in part, and concurring in the judgment:

I concur with the majority's affirmance of the IJ's adverse credibility determination and denial of the petition for review. I part ways with the majority, however, over which adverse credibility findings are supported by substantial evidence.

I respectfully disagree with the majority that substantial evidence supports the IJ's adverse credibility finding on the basis of Kaur's failure to inform the Border Patrol Agent of her fear of harm in India. There is no doubt this evidence goes to the heart of Kaur's asylum claim and undermines her credibility. However, in making adverse credibility determinations, IJs must follow certain guidelines under Ninth Circuit law. One such guideline requires IJs to address, "in a reasoned manner," the asylum applicant's explanations for any inconsistencies in the record. *See, e.g., Garrovillas v. INS,* 156 F.3d 1010, 1014 (9th Cir.1998); *see also Hakeem v. INS,* 273 F.3d 812, 816 (9th Cir.2001) (reversing the IJ's adverse credibility determination based on a discrepancy between the petitioner's claimed Ahmadi faith and his passport, which listed his religion as Muslim, because neither the BIA nor the IJ addressed the petitioner's explanation for the discrepancy).

In this case, Kaur testified she failed to reveal her fear of harm in India to the Border Patrol Agent and on the Notice of Rights Form ("Form") because: (1) the Border Patrol Agent did not ask her whether she would face harm in India, and was interested only in her missing identification and why she was roaming around the border; (2) the Border Patrol Agent did not read the Notice of Rights Form to her and she had no idea what the Form stated;[1] (3) she signed the Form only because she was told to do so; (4) her travel agent had told her she would be deported to India if she told the truth about her fear of return to India; and (5) she was scared the Border Patrol Agent would abuse her like the Indian police.

The IJ referred to only two of these five justifications (the fourth and the fifth) in her decision. Even with respect to those two, however, the IJ did not address why—or even whether—she found the justifications not credible. Because the IJ failed to address the above-listed justifications in "a reasoned manner," the IJ's adverse credibility finding on this basis cannot be upheld under binding Ninth Circuit precedent.

The majority quotes a statement from the IJ's opinion, which notes Kaur failed "convincingly [to] address the discrepancies" in her testimony. This statement appears at the end of the IJ's opinion, in a section separate from the discussion of Kaur's failure to inform Border Patrol of her fear of harm in India. Even assuming this cursory statement can be interpreted to cover the above-listed justifications, it does not address them in a reasoned manner. The IJ's statement does not even refer to Kaur's justifications, let alone explain why the IJ found them unconvincing. The statement could as easily describe an impression gained from Kaur's demeanor, as from any explanation she attempted.[2]

---

1. Although, as the majority notes, Kaur testified there was a Punjabi interpreter during her border interview, she also testified neither the interpreter nor the Border Patrol Agent read the Form to her.

2. The majority thus errs in contending the IJ made this statement "[i]n reference to" Kaur's justifications. There is no indication in the IJ's opinion the statement refers to Kaur's justifications for her failure to reveal her fear of harm upon return to India. There is likewise no support in the IJ's opinion for

The majority also draws an adverse inference from the fact that Kaur had more than one explanation for failing to inform Border Patrol of her fear of return to India. The majority notes when the IJ asked Kaur which explanation was the "real" one, Kaur replied all of them were "real." Kaur can have more than one valid reason for failing to inform Border Patrol of her fear of persecution. The justifications Kaur offered are neither internally inconsistent nor inherently implausible. They can all be true.[3]

As final support for its conclusion that the IJ adequately addressed Kaur's justifications, the majority notes Kaur did not deny during the removal hearing that she told Border Patrol she was in Canada for sightseeing.[4] According to the majority, this is inconsistent with her current story that she came to Canada because she was fleeing for her life.

For two reasons, the majority's reliance on this discrepancy is unpersuasive. First, the majority does not explain how Kaur's statement about sightseeing relates to the IJ's failure to address Kaur's justifications for not revealing her fear of harm in India. That there is a *discrepancy* which may allow the IJ to make an adverse credibility finding does not necessarily mean the IJ adequately addressed the *justifications*

Kaur proffered for the discrepancy, as the IJ was required to do. Second, the IJ did not make an adverse credibility finding on the basis of Kaur's statement to the Border Patrol Agent that she was in Canada for sightseeing. Under well-established precedent, we are limited to reviewing only the actual adverse credibility findings made by the IJ, and cannot find new discrepancies on appeal. *See Marcos v. Gonzales,* 410 F.3d 1112, 1116 (9th Cir.2005).

In sum, I respectfully disagree with the majority that substantial evidence supports the IJ's credibility finding on the basis of Kaur's failure to inform Border Patrol of her fear of persecution in India.

However, I agree with the majority that substantial evidence supports the IJ's adverse credibility finding on the basis of Kaur's inconsistent statements regarding where she stayed after she fled from her village. *See Chebchoub v. INS,* 257 F.3d 1038, 1043 (9th Cir.2001) (holding inconsistencies in the petitioner's testimony regarding the events leading up to and surrounding his departure from his home country go to the heart of the asylum claim and can be the basis for an adverse credibility finding). During her removal hearing, Kaur testified she stayed with an aunt in "UP"[5] and then at a hotel in Delhi

---

the majority's ipse dixit conclusion that "the IJ considered Kaur's explanations and dismissed them as not convincing."

**3.** The majority contends Kaur's first justification (the Border Patrol Agent did not ask her whether she would face harm in India) and the fourth justification (her travel agent had told her she would be deported to India if she told the truth about her fear of return to India) are internally inconsistent, "shifting," and "undercut each other." According to the majority, Kaur's statement that "she relied on her agent's advice not to tell the truth and that she was too frightened to reveal the truth" means "she had in fact been asked about fear of returning to India." I respect-

fully disagree. A person can be afraid of revealing the truth even before he is asked a question intended to elicit the truth. A person can also decide not to volunteer the truth because of his fear of telling the truth, without ever being asked about it. Thus, Kaur's first and fourth justifications are not inconsistent.

**4.** During the removal hearing, Kaur testified she told the Border Patrol Agent she was in Canada for sightseeing because her travel agent instructed her to say so if questioned at the border.

**5.** "UP" refers to the Uttar Pradesh region in Northern India.

by herself, after she fled from her village. In contrast, in a written declaration she filed in support of her asylum application, Kaur stated after she left her village, she "lived at different places with *relatives* until I fled from India." (emphasis added). The word "relatives" in Kaur's declaration is plural, meaning she stayed with more than one relative, and the declaration does not state Kaur also stayed at a hotel after she fled from her village. The IJ made an adverse credibility finding based on the inconsistency between Kaur's declaration, which states she stayed with "relatives," and her hearing testimony, which stated she stayed with her aunt and at a hotel by herself. I would affirm the IJ's adverse credibility determination and deny the petition for review on the basis of this inconsistency. *See Wang v. INS*, 352 F.3d 1250, 1259 (9th Cir.2003) (holding the court must accept the IJ's negative credibility determination if one of the adverse credibility grounds is supported by substantial evidence).