# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2503

_____

Artur Camishi,                                    *
                                                  *
            Petitioner,                           *
                                                  *   Petition for Review of an Order of the
      v.                                          *   Board of Immigration Appeals.
                                                  *
Eric H. Holder, Jr., Attorney General             *
of the United States,                             *
                                                  *
            Respondent.                           *

_____

Submitted: March 10, 2010
Filed: August 17, 2010

_____

Before BYE, ARNOLD, and COLLOTON, Circuit Judges.

_____

BYE, Circuit Judge.

Artur Camishi, a citizen of Albania, petitions for review of a Board of Immigration Appeals (BIA) decision dismissing Camishi's appeal from the Immigration Judge's (IJ) order removing him from the United States to Albania. Camishi argues the IJ and BIA violated his due process rights under the Fifth Amendment. Camishi also argues the IJ and BIA improperly denied his request for asylum under 8 U.S.C. § 1158, as well as his request for withholding of removal under 8 U.S.C. § 1231(b)(3), and for protection under Article III of the Convention Against Torture (CAT). We deny the petition for review.

I

Camishi was admitted to the United States on November 5, 2000, as a non-immigrant visitor with authorization to remain in the United States until May 4, 2001. Camishi remained in the United States after that time, without authorization, and he filed an asylum application[1] with the Immigration and Naturalization Service (INS).[2] The INS issued Camishi a Notice to Appear and charged him with removability under 8 U.S.C § 1227(a)(1)(B) as an alien who, after admission as a non-immigrant under 8 U.S.C. § 1101(a)(15), remained in the United State for a time longer than permitted. Camishi appeared before an immigration judge and conceded removability, but requested asylum, withholding of removal, and protection under CAT. Camishi claimed he had experienced past persecution and feared future persecution in Albania because of his political activity supporting the Democratic Party. Camishi claimed he was beaten, imprisoned, and unable to work because of his affiliation with the Democratic Party. Camishi left Albania after he was summoned to appear before a court and the police confiscated information which Camishi had collected about government officials involved in illegal activity.

In support of his claims, Camishi submitted four documents: (1) "Vertetim" dated September 23, 2001 (a letter from Vili Minarolli, "Head of the Tirana Branch of the Democratic Party of Albania," confirming Camishi's membership and political activities); (2) "Flete-Thirje" dated August 26, 2000 (an "Appearance Order" from Vice-Colonel Ilir Belivoda, the "Chief of Order of Police," directing Camishi to appear at the Commissariat of Police on August 27, 2000); (3)"Urdher" dated October

---

[1]The parties dispute the date of the asylum application, but as the BIA's decision was based on merits, we need not determine the date of asylum application.

[2]In 2003, INS ceased to exist as an agency within the Department of Justice and its enforcement functions were transferred to the Department of Homeland Security (DHS).

14, 2000 (an "Order of Appearance of Citizen" from the "Officer of Court Police" directing Camishi to appear in court on November 10, 2000); and (4) an Albanian Democratic Party Membership Card issued May 5, 1993.

The documents were examined by a forensic document examiner at the Forensic Document Laboratory (FDL) in DHS's Immigration and Customs Enforcement (ICE) section. The forensic examiner could not conclusively authenticate the "Vertetim," "Flete-Thirje," and "Urdher" because the FDL did not have contemporaneous genuine specimens for comparison. The forensic examiner concluded the "Vertetim" and the "Flete-Thirje" were not what they purported to be because the documents share a combination of mechanical markings which indicate they were prepared by a common source, yet were ostensibly prepared by different agencies more than a year apart. The forensic examiner also concluded the "Urdher" was suspicious because: (1) the wet seal on it bore evidence it was produced by hand, which is not an accepted way of preparing a wet seal, (2) the hand drawn seal covered a portion of the signature and the date, and (3) the document was initially misdated as being issued in the year "1000" then later changed to "2000." Finally, the forensic examiner determined the Democratic Party Membership card should not be accepted at face value, as it was allegedly obtained eight years before the other documents, yet did not show any signs of wear and showed signs of being made contemporaneously with the other documents and then probably back-dated.

Camishi offered testimony from an expert on the government, politics, and history of Albania. The historical expert explained there are serious economic difficulties which affect documentation because of the political transitions in Albania. There is no pattern for official documentation in Albania. Government offices often use regular paper, sometimes use typewriters, and other times use letterhead paper. In this context, the historical expert concluded the documents seemed genuine, but indicated there is a great deal of opportunity for document fraud in Albania because of frequent inconsistencies in government documents.

The IJ denied Camishi's applications for asylum, withholding of removal, and CAT protection. The IJ concluded Camishi lacked credibility because Camishi submitted fraudulent documents. The IJ further found Camishi failed to meet the requisite burden of proof to establish an asylum claim as he failed to demonstrate the isolated incidents he suffered in Albania were because of his political affiliation. Since Camishi failed to establish eligibility for asylum, the IJ found he necessarily failed to satisfy the more stringent standard for withholding of removal, and denied Camishi's CAT claim because he was generally not credible and failed to meet his burden of proof in demonstrating he was more likely than not to be tortured upon return to Albania. See 8 C.F.R. § 208.16(c)(2). The BIA affirmed the IJ's decision and dismissed Camishi's appeal.

II

Camishi argues his due process rights under the Fifth Amendment were violated when the BIA failed to address the timeliness of his asylum application. The IJ found Camishi was ineligible for asylum because he could not demonstrate by clear and convincing evidence his application was filed within one year after arriving in the United States. See 8 U.S.C. § 1158(a)(2)(B). Also, Camishi was not able to demonstrate either the existence of changed circumstances which materially affect his eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within one year after arriving in the United States. See 8 U.S.C. § 1158(a)(2)(D). Nonetheless, the IJ also denied Camishi's claim for asylum on the merits, independent of the time bar. Without reaching the timeliness issue, the BIA affirmed the judgment of the IJ on the merits, because Camishi lacked credibility as he submitted fraudulent documents in support of his claim.

To establish a Fifth Amendment due process violation, Camishi must demonstrate both a fundamental procedural error and prejudice as a result of the error. Lopez v. Heinauer, 332 F.3d 507, 512 (8th Cir. 2003). Prejudice requires "a showing

-4-

that the outcome of the proceedings may well have been different had there not been any procedural irregularities." Tun v. Gonzales, 485 F.3d 1014, 1026 (8th Cir. 2007). Camishi must demonstrate an error which potentially affects the outcome. Id. Since the IJ denied the petition on an adverse credibility finding independent of the time bar, and the BIA affirmed the credibility finding, we conclude there is no prejudice and Camishi's due process rights under the Fifth Amendment were not violated.

On appeal to the BIA, Camishi did not discuss his claim of withholding from removal pursuant to 8 U.S.C. § 1231(b)(3) or his claim for relief under CAT. In order to seek judicial review, Camishi must exhaust all administrative remedies available to him as of right. 8 U.S.C. § 1252(d)(1). In Etchu-Njang v. Gonzales, 403 F.3d 577, 581-83 (8th Cir. 2005), we concluded Congress likely intended to require an alien not only pursue all stages of administrative review, but also raise all issues before the agency (BIA). As Camishi did not raise any issues related to withholding of removal pursuant to 8 U.S.C. § 1231(b)(3) and relief under CAT before the BIA, our court cannot give consideration to those claims.

Camishi argues there was insufficient evidence on the record to support the adverse credibility finding of the IJ because the government failed to definitively determine the documents he submitted were fraudulent, and the IJ failed to give proper weight to the evidence of conditions in Albania attested to by the historical expert.

This court defers to the discretionary judgment of the IJ with respect to relief under 8 U.S.C. § 1158 (asylum relief) unless the decision is "manifestly contrary to the law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D).

> The Secretary of Homeland Security or the Attorney General may grant asylum to an alien who has applied for asylum in accordance with the requirements and procedures established . . . if the Secretary of

Homeland Security or the Attorney General determines that such alien is a refugee within the meaning of section 1101(a)(42)(A) of this title.

8 U.S.C. § 1158(b)(1)(A). To establish refugee status, Camishi is required to demonstrate he has a well-founded fear of persecution because of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1158(b)(1)(B)(i). A claim for asylum may be rejected solely on the ground that the applicant's claim is not credible. Falaja v. Gonzales, 418 F.3d 889, 897 n.4 (8th Cir. 2005). An adverse credibility determination is conclusive "unless any reasonable adjudicator would be compelled to conclude to the contrary." Mamana v. Gonzales, 436 F.3d 966, 968 (8th Cir. 2006) (quoting Turay v. Ashcroft, 405 F.3d 663, 668 (8th Cir. 2005); see 8 U.S.C. § 1252(b)(4)(B). The IJ or BIA may reach an adverse credibility determination based on the applicant's submission of fraudulent documents, if the petitioner fails to offer a legitimate explanation for the suspected fraud. Onsongo v. Gonzales, 457 F.3d 849, 854 (8th Cir. 2006).

The IJ found Camishi generally not credible because he submitted fraudulent documents. The forensic examiner testified the "Vertetim" dated September 23, 2001, bore a combination of mechanical marks indicating it was prepared by the same source as the "Flete-Thirje" dated August 26, 2000. This is suspicious because the two documents purport to have been issued by different entities more than one year apart. The authenticating wet seal stamp impression appearing on the "Urdher" bore evidence of hand-drawing, which is not an accepted method for wet seals. Instrumental examination determined the wet seal impressions on the Democratic Party Membership Card are same-source associated with the wet seal stamp impressions appearing on the "Vertetim." The Democratic Party Membership card and the "Vertetim" were supposedly issued more than eight years apart, but the wet seal impression from 2001 shows none of the expected marks of wear and tear which would be expected over such a period of time.

Camishi offered testimony of frequent document fraud in government offices of Albania and of the poor conditions or lack of equipment which causes an absence of official indicia, but he presented no explanation for the temporal discrepancies. The testimony of the historical expert does not address the forensic examiner's finding of several documents with the same mechanical markings indicating the documents were prepared at the same time, with the same source, and with the absence of expected wear of older documents. Camishi has not alleged they were obtained from a single source after their original date of issue. In Kourski v. Ashcroft, 355 F.3d 1038, 1039 (7th Cir. 2004), the petitioner presented a fraudulent birth certificate, but testified his mother procured the forged birth certificate. The IJ in Kourski did not find the petitioner knew or suspected the birth certificate was a forgery, and the court concluded the fact of forgery, under those circumstances, did not undermine the petitioner's credibility. The credibility finding in the instant case is more akin to that in Averianova v. Mukasey, 509 F.3d 890, 896 (8th Cir. 2007), where the IJ rejected the petitioners' asylum and withholding of removal claims because the documents submitted were fraudulent. In Averianova, the IJ weighed the evidence and found the Averianovas' proffered explanation for the fraud not credible. Id. In the instant case, Camishi failed to offer any explanation for the discrepancies in the submitted documents, and the IJ's credibility finding is equally supported.

Camishi asserts the decision of the IJ is inconsistent with Wang v. INS, 352 F.3d 1250 (9th Cir. 2003). In Wang, the court found "mere failure to authenticate documents, at least in the absence of evidence undermining their reliability, does not constitute a sufficient foundation for an adverse credibility finding." Id. at 1254. The forensic examiners in Wang could not determine the documents were authentic, but also did not find the documents were forgeries either. Id. In the instant case, the forensic examiner made no affirmative finding the documents were fraudulent, but she testified about discrepancies which support the IJ's finding of fraud on the part of Camishi or some other person. This, coupled with the fact Camishi provided no explanation for the temporal discrepancies, is distinguishable from Wang where there

-7-

were no indicia of fraud and where the forensic examiners were merely unable to authenticate the submitted documents.

The evidence in the record does not compel reversal of the IJ's credibility determination. Since Camishi's asylum claim was based on his testimony, in combination with documents the IJ found unreliable because of fraud in connection with other submissions, Camishi's claim for asylum fails.

### III

For the reasons stated above, we deny the petition for review.

_____