**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

KUMARI PUSPA SHARMA,

Petitioner,

v.

ERIC H. HOLDER, JR ., Attorney
General,

Respondent.

No. 07-73710

Agency No. A098-840-445

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted October 14, 2011
San Francisco, California

Before:     B. FLETCHER, REINHARDT, and TASHIMA, Circuit Judges.

Kumari Puspa Sharma, a native and citizen of Nepal, petitions for review of the

Board of Immigration Appeals's summary affirmance of an Immigration Judge's

(IJ's) decision denying her application for asylum, withholding of removal, and relief

under the Convention Against Torture (CAT). Exercising jurisdiction under 8 U.S.C.

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

§ 1252, we grant the petition for review and remand to the agency for two reasons. First, the IJ's assessment of Sharma's testimony ignored important record evidence relating to the discrepancy on which the IJ based her adverse credibility finding. Second, the IJ should not have sought an additional investigation of the documentary evidence that Sharma submitted to corroborate her claim.

**1.**     The IJ rejected Sharma's asylum and withholding claims after finding her not credible. Adverse credibility determinations are reviewed for substantial evidence. *Gui v. INS*, 280 F.3d 1217, 1225 (9th Cir. 2002). Under this standard of review, the IJ's "determination must be upheld if it is supported by reasonable, substantial and probative evidence from the record." *Kumar v. Gonzales*, 444 F.3d 1043, 1049 (9th Cir. 2006). Our review must consider "the record as a whole." *Singh v. Holder*, 638 F.3d 1264, 1270 n.15 (9th Cir. 2011).

Sharma's asylum declaration states that she was threatened by the Maoists during a June 2002 incident, one of three incidents that formed the basis for her claims of past persecution and a well-founded fear of future persecution. During her asylum interview, however, Sharma stated that she was physically attacked rather than only threatened during this particular incident. Before the Immigration Court, Sharma testified in a manner consistent with her declaration that she was threatened but not attacked in June 2002; she explained that she was confused during the asylum

2

interview and that she had been thinking of a "bigger . . . incident" that occurred later and did involve physical violence. The IJ found Sharma not credible on the basis of this discrepancy between her statements before the asylum officer and the otherwise consistent statements in her declaration and her testimony at the removal hearing.

The IJ does not appear, however, to have considered a crucial part of the asylum officer's notes—the sole account of Sharma's statements in the asylum interview. At the end of the notes, the asylum officer wrote the following: "I DN think she understood some Q's. She DN understand 'discrepancy' between test - decla." We can reasonably interpret the asylum officer's abbreviations to infer that he did not believe Sharma understood his questions regarding the discrepancy between her declaration and her statements in the asylum interview—the discrepancy that led the IJ to find her not credible. "Because an adverse credibility determination under the REAL ID Act must be based on the 'totality of the circumstances,'" an IJ is required to "consider and address, as necessary or otherwise appropriate, relevant evidence that tends to contravene a conclusion that a given factor undermines credibility." *Shrestha v. Holder*, 590 F.3d 1034, 1044 (9th Cir. 2010). The IJ here, however, did not consider the obviously "relevant evidence that tends to contravene" her determination that the discrepancy between Sharma's statements undermines Sharma's credibility. We

3

therefore conclude that the IJ's adverse credibility determination was based "on less than the total circumstances in contravention of the REAL ID Act's text." *Id.*

**2.** In light of her finding that Sharma's testimony was not credible, the IJ allowed Sharma to submit additional documentary evidence to corroborate the testimony. The IJ found that these documents, "taken at face value, . . . do provide significant corroboration of [Sharma's] claim." The IJ nonetheless held that it was "still incumbent on [Sharma] to undertake any reasonable measures to verify the reliability of her documentation," and she drew a negative inference from Sharma's decision not to sign a confidentiality waiver that would have permitted the government to conduct an overseas investigation of the documents. This was error.

An alien's "[m]ere failure to authenticate documents, at least in the absence of evidence undermining their reliability, does not constitute a sufficient foundation for an adverse credibility finding." *Wang v. INS*, 352 F.3d 1250, 1254 (9th Cir. 2003); *see also Shah v. INS*, 220 F.3d 1062, 1071 (9th Cir. 2000). The IJ found no evidence undermining the reliability of the facsimile documents that Sharma submitted; in fact, she explicitly declined to draw a "negative inference from [Sharma's] failure to provide original documents," given the "great upheaval" in Nepal at the time.

She therefore erred by seeking *additional* corroboration of the already reliable corroborating evidence. As we held in *Rosas-Castaneda v. Holder*, 655 F.3d 875 (9th

4

Cir. 2011), "[t]he plain language of 8 U.S.C. § 1229a(c)(4)(B)," codifying the REAL ID Act, "authorizes IJs to request corroboration of only *testimonial* evidence, and conspicuously excludes the authority to require an alien to corroborate 'other evidence in the record.'" *Id.* at 884. Because the IJ should not have sought an overseas investigation to corroborate the reliable documentary evidence that Sharma submitted, Sharma's refusal to consent to such an investigation should have been immaterial.

\*　　\*　　\*

We remand for the agency to reconsider the question of Sharma's credibility. The agency's credibility analysis on remand shall discount significantly the weight of Sharma's statements regarding the June 2002 incident in her asylum interview, given the asylum officer's indication that Sharma was not able to understand questions regarding the discrepancy between her statements regarding the June 2002 incident and her prior declaration. And it shall give due weight to the corroborating evidence that Sharma submitted, setting aside Sharma's refusal to authorize the government to investigate that evidence. The agency may consider whether it is appropriate to conduct additional evidentiary proceedings, so as to consider any change in country conditions and any new corroborating evidence that Sharma may be able to provide.

**GRANTED and REMANDED.**