**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

MAY 12 2022

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

ZHONGHUI LI,

Petitioner,

v.

MERRICK B. GARLAND, Attorney
General,

Respondent.

No.    17-71002

Agency No. A096-144-077

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted May 9, 2022[**]
Pasadena, California

Before:  MCKEOWN and OWENS, Circuit Judges, and HELLERSTEIN,[***]
District Judge.

Zhonghui Li, a citizen of the People's Republic of China, petitions for

review of a decision of the Board of Immigration Appeals ("BIA") dismissing his

---

[*]      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]      The panel unanimously concludes this case is suitable for decision
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[***]      The Honorable Alvin K. Hellerstein, United States District Judge for
the Southern District of New York, sitting by designation.

appeal of the immigration judge's ("IJ") denial of his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We have jurisdiction to review under 8 U.S.C. § 1252. We conclude that the agency erred in determining that Li lacked credibility. We thus grant the petition and remand to the agency for further proceedings.

## I.     Standard of Review

"Where, as here, the BIA cites *Burbano* and also provides its own review of the evidence and law, we review both the IJ's and the BIA's decisions." *Aguilar Fermin v. Barr*, 958 F.3d 887, 891 (9th Cir.) (quoting *Ali v. Holder*, 637 F.3d 1025, 1028 (9th Cir. 2011)), *cert. denied*, 141 S. Ct. 664 (2020); *Matter of Burbano*, 20 I. & N. Dec. 872, 874 (BIA 1994). Because Li filed his application for asylum before the May 11, 2005, effective date of the REAL ID Act, we review the agency's factual determination for substantial evidence and must deny the petition unless the evidence compels a contrary conclusion. For pre-REAL ID Act cases such as this one, "so long as one of the identified grounds is supported by substantial evidence and goes to the heart of [Li's] claim of persecution, we are bound to accept the IJ's adverse credibility finding." *Li v. Ashcroft*, 378 F.3d 959, 964 (9th Cir. 2004) (quoting *Wang v. INS*, 352 F.3d 1250, 1259 (9th Cir. 2003)).

**II.     The Grounds Underlying the Agency's Adverse Credibility Determination**

On appeal, we review "the reasons explicitly identified by the BIA" and "the reasoning articulated in the IJ's oral decision in support of those reasons." *Lai v. Holder*, 773 F.3d 966, 970 (9th Cir. 2014) (quoting *Tekle v. Mukasey*, 533 F.3d 1044, 1051 (9th Cir.2008)).  In affirming the IJ's adverse credibility determination, the BIA cited "inconsistent, evasive, and nonresponsive testimony" with respect to: (1) Li's introduction to Christianity; (2) the manner in which police officers approached the house church prior to Li's arrest; (3) whether and how often Li attended his house church following his release from detention; and (4) the treatment he received for his injuries.  The BIA further relied on (5) Li's alleged misrepresentations as to his address in the United States, which in turn "undermined" his claim to have attended the church he specified.

In general, to base an adverse credibility finding on nonresponsiveness, an IJ must identify instances in the record where a noncitizen refuses to answer questions. *See Garrovillas v. INS*, 156 F.3d 1010, 1014–15 (9th Cir. 1998).  A minor inconsistency or incidental misstatement that does not go to the heart of an applicant's claim does not support an adverse credibility determination. *Zi Lin Chen v. Ashcroft*, 362 F.3d 611, 617, 620 (9th Cir. 2004).

1. The IJ found that Li gave "nonresponsive testimony" about his introduction to Christianity, mostly because Li initially did not give dates when

3

asked when he became a Christian and instead stated that he was introduced to Christianity by a friend when Li's wife was in the hospital. Li elsewhere testified that his wife was in the hospital in August of 1997, and that he met the introducing friend in 1996. However, after the IJ pressed Li to provide a date for his introduction to Christianity, Li stated that he was introduced in 1996. The IJ found this testimony inconsistent with Li's claim in his asylum application that he was introduced to Christianity in August of 1997 when his wife was in the hospital.

This discrepancy, if it can be called one, is minor. Li was firm in his testimony that he and his wife began to pray, upon a friend's suggestion while his wife was told in the hospital that she would not recover after a difficult pregnancy, and that he attributed her recovery to his prayers. The confusion as to dates when he met his friend, when his wife was in the hospital, and when he became a Christian is immaterial, especially in the context of difficulty in interpretations between English and Mandarin. *See Damaize-Job v. INS*, 787 F.2d 1332, 1337 (9th Cir. 1986) ("Minor discrepancies in dates that . . . cannot be viewed as attempts by the applicant to enhance his claims of persecution have no bearing on credibility."); *see also Martinez-Sanchez v. INS*, 794 F.2d 1396, 1400 (9th Cir. 1986) (reversing adverse credibility determination based on "trivial errors" about date the petitioner joined a paramilitary group).

Although the IJ found that Li's unwillingness to respond called into question whether the events happened, the record compels a contrary conclusion. In reaching her determination, the IJ disregarded other significant and material testimony about Li's conversion to Christianity. Li testified that his prayers caused him to believe that God would arrange everything, and that after he and his wife prayed, "[his] wife woke up[, and they felt] like there was an angel with [them], mentally and physically." Li testified about his baptism ceremony in February 1998.

> On that day it was a Sunday, everybody was happy for that special day, especially for myself and my wife. We were there to be baptized. First of all the pastor asked us if we confessed that we were sinners and we were willing to accept Jesus Christ as our Savior. And then we were baptized by dipping the water and our brothers and sisters applauded for our new life.

Li also testified that he "trusted [himself] into God," and he felt "like [he] was reborn." The IJ did not address any of this detailed and specific testimony. If the IJ had considered it, Li's inability to specify a date about his conversion to Christianity would hardly call into question "whether these events actually occurred."

2. Next, the IJ found that Li gave "nonresponsive" testimony about the manner in which the police approached the house church prior to his arrest. However, this finding also is not supported by substantial evidence. Li plainly

5

testified that "[s]omebody reported it[,]" and that "[s]even officers from the public security bureau, along with the local community member or members . . . kicked the door open and told [them] without authority's permission [they] had gathering at house church." Li's answers made clear that he was inside the house church at the time of the arrest, so it is unreasonable to expect him to know how the police approached the building. Li's account was terse but plausible, and the IJ erred in concluding that he "did not provide any responsive or non-evasive answer."

3. The IJ further found that Li was inconsistent in recounting his church attendance following his release from detention. Yet, but for one negative answer that he quickly corrected, Li was consistent that he privately attended a house church following his release. When pressed, he clarified that he attended once a week, so perhaps two or three times in total. "[A] general response to questioning, followed by a more specific, consistent response to further questioning is not a cogent reason for supporting a negative credibility finding." *Kaur v. Ashcroft*, 379 F.3d 876, 887 (9th Cir. 2004).

The IJ found this timeline "not plausible," because other evidence suggested that Li left China approximately a week after his release. Li attempted to explain the inconsistency by claiming that he "went there at night" and that his "schedule was very tight." To the extent Li's testimony in this respect was inconsistent or implausible, such an inconsistency is trivial. *See Xun Li v. Holder*, 559 F.3d 1096,

6

1104 (9th Cir. 2009) (finding an inconsistency as to the number of times an applicant hosted church meetings was an improper basis for the IJ's adverse credibility finding because it "does not impact the question of whether he was attacked by Chinese authorities . . . or whether he would fear returning to China").

4. The IJ also faulted Li for refusing to answer questions about the medical treatment he received after his detention, stating that Li only "referred to locations where treatment might have occurred, [and] not the type of treatment that he received." The IJ found that Li's unwillingness to answer these questions called into question whether the abuse he suffered rose to the level of persecution. Again, the record is contrary. Li's testimony about his hospital experience, including the tests that were performed, and that he was held for three days based on a possible minor concussion, was consistent with the hospital records that he submitted. Further, Li's detailed description of his detention, the physical abuse he suffered, and the resulting injuries contradicts the IJ's conclusion.

5. The IJ devoted considerable space to discussing Li's "inconsistent and unpersuasive testimony regarding his residence in the United States as it relates to whether he attends church in Southern California." The IJ made much of evidence submitted by the Department of Homeland Security suggesting that Li may have lived in New York, which would render his attendance of a California church implausible. Yet Li denied ever living in New York, and the evidence suggesting

that he did contained a name that did not have the same spelling as Li's name. "Speculation and conjecture cannot form the basis of an adverse credibility finding, which must instead be based on substantial evidence." *Shah v. INS*, 220 F.3d 1062, 1071 (9th Cir. 2000). That Li inaccurately listed as a home address a business several hundred miles away does not go to the heart of his claim.

In sum, we find that none of the grounds identified by the BIA are both supported by substantial evidence and go to the heart of Li's claim.

We further find the IJ erred in requiring Li to produce adequate corroborating evidence for everything he said. "In a pre-REAL ID Act case, absent other substantial evidence of adverse credibility, the production of corroborating evidence cannot be required." *See Lei Li v. Holder*, 629 F.3d 1154, 1160 (9th Cir. 2011) (citing *Lopez-Alvarado v. Ashcroft*, 381 F.3d 847, 855 (9th Cir. 2004)). "When credibility is the only issue on appeal, and once each of the IJ's reasons for finding adverse credibility is shown to be defective, this court accepts a petitioner's testimony as credible." *Id.* (citing *Soto-Olarte v. Holder*, 555 F.3d 1089, 1095 (9th Cir. 2009)).

## III.   Conclusion

We reverse the adverse credibility determination, and remand to the agency for further proceedings consistent with this disposition.

**PETITION GRANTED and REMANDED.**