**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ABU BAKARR KAMARA, | No. 06-71763 |
| Petitioner, | Agency No. A096-487-795 |
| v. | |
| ERIC H. HOLDER Jr., Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued March 14, 2008
Submission Vacated April 30, 2008
Submitted February 25, 2010
Seattle, Washington

Before: B. FLETCHER, REINHARDT, and PAEZ, Circuit Judges.

Abu Bakarr Kamara ("Kamara"), a native and citizen of Sierra Leone,

petitions for review of a Board of Immigration Appeals ("BIA") order adopting

and affirming the decision of the Immigration Judge ("IJ") denying Kamara's

application for asylum, withholding of removal, and relief under the Convention

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

Against Torture ("CAT").[1] Kamara fears that, if he returned to Sierra Leone, he would be tortured or persecuted by the Revolutionary United Front ("RUF") guerrillas because he is a member of the Mandinka tribe. He testified before the IJ that he and his family were attacked by the RUF on three separate occasions before he fled Sierra Leone, and that he has been advised not to return.

The IJ denied Kamara's application because he found that Kamara was not credible and, as a result, he had not established that he had filed for asylum within one-year of arriving in the United States or that he had suffered past persecution. The IJ also found that even if Kamara had established past persecution, documentary evidence of changed country conditions in Sierra Leone rebutted the presumption of a well-founded fear of future persecution.

## I.

We lack jurisdiction to review the IJ's finding that the asylum application was time-barred. *See* 8 U.S.C. § 1158(a)(2)(B), (a)(3). We may review an IJ's timeliness decision only where it is based on undisputed facts. *See Ramadan v. Gonzales*, 479 F.3d 646, 648 (9th Cir. 2007) (interpreting REAL ID Act, which

---

[1]We review the IJ's opinion because the BIA affirmed by citing *Matter of Burbano*, 20 I & N Dec. 872 (BIA 1994) and did not express disagreement with any portion of the IJ's reasoning. *See Abebe v. Gonzales*, 432 F.3d 1037, 1040 (9th Cir. 2005) (en banc).

granted jurisdiction to review "questions of law," 8 U.S.C. § 1252(a)(2)(D), as permitting this court to review an IJ's application of the law to undisputed facts). Here, the IJ had to resolve a factual dispute in order to determine whether Kamara's asylum application was timely, namely the credibility of Kamara's testimony as to when he first entered the United States. The IJ found that Kamara was not credible. *See Kataria v. INS*, 232 F.3d 1107, 1113 (9th Cir. 2000) ("It is . . . well settled that we must accept an applicant's testimony as true *in the absence of an explicit adverse credibility finding*.") (emphasis added). We lack jurisdiction to review the IJ's finding that the asylum application was time-barred and accordingly dismiss that portion of the petition. *See* 8 U.S.C. § 1158(a)(2)(B), (a)(3).

## II.

We have jurisdiction to review the denial of Kamara's withholding of removal and CAT claims, *Kasnecovic v. Gonzales*, 400 F.3d 812, 815 (9th Cir. 2005), and we grant this portion of the petition in part and deny it in part.

The IJ's adverse credibility and changed circumstances findings are subject to review and we conclude that they are not supported by substantial evidence. The IJ found Kamara's testimony not credible because that testimony was, according to the IJ, inconsistent and unspecific. The IJ also faulted Kamara for not

3

providing corroborating evidence and accused him of being evasive.[2] As an initial

matter, Kamara was not required to support his testimony with corroborating

evidence. *See Campos-Sanchez v. INS*, 164 F.3d 448, 451 n.1 (9th Cir. 1999). As

for the other factors, although it was appropriate for the IJ to consider them, his

conclusions are not supported by the record.

The IJ noted two inconsistencies, which he deemed "substantial": (1) at one

point during his testimony, Kamara confused the dates of a particular attack on the

family compound, stating that the attack occurred in 1997 rather than 1999; and (2)

Kamara said that he never returned home after the 1999 incident and later claimed

a final run-in with the RUF in 2002. A review of the record makes clear that these

alleged inconsistencies were the product of the difficulties in translation that

plagued the hearing. These misunderstandings do not provide the proper basis for

the IJ's adverse credibility determination.

The first discrepancy regarding dates is a "minor inconsistency that cannot

form the basis of an adverse credibility finding." *Bandari v. INS*, 227 F.3d 1160,

1166 (9th Cir. 2000). Furthermore, at the point in the questioning where the

---

[2] Notably, the IJ concluded that Kamara's demeanor was "appropriate." *See Singh-Kaur v. INS*, 183 F.3d 1147, 1151 (9th Cir. 1999) (noting that we are most deferential to an IJ's conclusions regarding petitioner's demeanor because the IJ is the only adjudicator to have the benefit of personally witnessing the petitioner).

confusion arose, Kamara's counsel asked him about the 1997 attack but then Kamara jumped ahead and testified about the 1999 attack. Counsel quickly realized the misunderstanding and tried to clarify, asking Kamara to go back and testify about the 1997 attack. It seems from the transcript that Kamara did not actually confuse the dates or testify inconsistently, but rather kept talking about the 1999 attack because he did not understand that his counsel wanted him to talk about the 1997 attack instead.

As for the second inconsistency, it is true that Kamara gave one confusing response, suggesting that an RUF soldier came to his village and cut him with a sword in 2002. He previously testified that he had left his village in 1999 and never returned. But a review of the transcript makes clear that Kamara did not understand that the IJ was asking about the date of the sword attack. Kamara thought the IJ was asking about what year he left Somalia, which happened in May 2002. He later made clear that the sword attack occurred sometime in 1999, before he left his village. This reasonable misunderstanding cannot support an adverse credibility determination. *See id.* (explaining that minor errors should be disregarded because "asylum hearings frequently generate mistranslations and miscommunications").

5

The IJ's adverse credibility finding was also based on his finding that Kamara's testimony regarding the 1999 sword attack and his asylum application were both insufficiently specific. Again, this conclusion is not supported by substantial evidence. Kamara's testimony regarding the sword attack was very specific and he responded to all the questions asked of him. He even showed the IJ the long scars left by the attack. *See Zahedi v. INS*, 222 F.3d 1157, 1167 (9th Cir. 2000) (noting that lack of detail is not a basis for a negative credibility determination where neither the IJ nor government counsel asked for more details or otherwise indicated that the petitioner had failed to provide enough detail). The only detail he did not give was the exact date of the attack, but omission of such a minor detail is insufficient to uphold an adverse credibility finding. *Bandari*, 227 F.3d at 1167.

As for the lack of specificity in the asylum application, it is true that Kamara testified that the RUF attacked his village on three occasions, while his asylum application noted only that the RUF had once burned down his house. "An applicant's testimony is not per se lacking in credibility because it includes details that are not set forth in the asylum application." *Lopez-Reyes v. INS*, 79 F.3d 908, 911 (9th Cir. 1996). Moreover, we must read Kamara's application charitably; he was not represented by counsel and, because he cannot read or write in any

6

language, he had a friend fill out his asylum application. *See Smolniakova v. Gonzales*, 422 F.3d 1037, 1045 (9th Cir. 2005). Given his lack of familiarity with English and the immigration system, the lack of detail in his application – which did not contradict any of his testimony before the IJ – cannot support the adverse credibility finding.

Finally, the only point during his testimony at which Kamara might have appeared evasive was when he was asked for the date on which he received his new Sierra Leone passport. He was unable to remember the exact date, but did clearly communicate that he received his new passport before his asylum interview. Even if this response could be characterized as evasive, it regards details that are completely unrelated to the merits of his claim or his testimony. Accordingly, this response cannot support the IJ's negative credibility finding. *Cf. Mendoza Manimbao v. Ashcroft*, 329 F.3d 655, 660 (9th Cir. 2003) (noting that inconsistencies must go to the "heart of the asylum claim"); *Wang v. INS*, 352 F.3d 1250, 1256-57 (9th Cir. 2003) (upholding a negative credibility finding where petitioner was evasive when questioned about an inconsistency in his testimony).

We conclude that the IJ's negative credibility determination is not supported by substantial evidence. Kamara's testimony was neither inconsistent nor

unspecific, and he was not evasive. *See Damaize-Job v. INS*, 787 F.2d 1332, 1338 (9th Cir. 1986). Kamara must be deemed credible.

## III.

The IJ went on to find that, even if Kamara's testimony was to be believed, he was ineligible for withholding of removal because of changed country conditions. The IJ noted that the civil war had ended, the RUF had completely disarmed, and there was no evidence in the record that Mandinka were currently persecuted in Sierra Leone. With respect to the lack of evidence of persecution of Mandinka, the IJ improperly shifted the burden of proof to Kamara. *See* 8 C.F.R. § 1208.16(b)(1) (stating that the burden is on the government to prove changed circumstances by a preponderance of the evidence). As for the IJ's observations that the civil war had ended and the RUF disarmed, these general assertions about conditions in Sierra Leone are insufficient to rebut the presumption that Kamara's life or freedom would be threatened in the future. The IJ must explain how those changes would specifically affect Kamara. *See Rios v. Ashcroft*, 287 F.3d 895, 901 (9th Cir. 2002). The IJ also failed to consider evidence in the record that former members of the RUF have continued to commit human rights abuses after the disarmament. Accordingly, substantial evidence does not support the IJ's

8

conclusion that country conditions have changed sufficiently to rebut the presumption of future persecution.

We therefore grant the petition for review and remand to the BIA to determine whether Kamara's credible testimony establishes that he was persecuted in the past and therefore entitled to the presumption that he will more likely than not be persecuted in the future.[3]  We deny the petition with respect to CAT relief because substantial evidence supports the IJ's conclusion that Kamara has failed to establish that he will more likely than not be tortured if removed to Sierra Leone. *See* 8 C.F.R. § 1208.16(c).

**PETITION DISMISSED IN PART, DENIED IN PART, GRANTED IN PART, and REMANDED.**

_____

[3]Although we lack jurisdiction to review the IJ's dismissal of Kamara's asylum claim on grounds of timeliness, we encourage the BIA to reconsider it; in light of our reversal of the adverse crediblity determination, it would appear that Kamara complied with the one-year filing deadline.  *See Shire v. Ashcroft*, 388 F.3d 1288, 1299 n.8 (9th Cir. 2004).