[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-15925
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 1, 2011
JOHN LEY
CLERK

Agency No. A096-494-153

EDOUARD ADRIEN,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(November 1, 2011)

Before CARNES, HULL and WILSON, Circuit Judges.

PER CURIAM:

Edouard Adrien petitions for review of the Board of Immigration Appeals'

("BIA") decision that vacated the order of the Immigration Judge ("IJ") granting

Adrien withholding of removal under the United Nations Convention Against

Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment

("CAT"), 8 C.F.R. § 208.16(c). After review, we dismiss in part and deny in part

Adrien's petition for review.

## I. BACKGROUND

### A. Prior Convictions and Notice to Appear

In 2004, Adrien, a native and citizen of Haiti, was paroled into the United

States. In 2005, his status was adjusted to that of a lawful permanent resident.

By 2009, Adrien accumulated a number of criminal convictions, including

two convictions for fleeing and eluding a police officer, in violation of Florida

Statutes § 316.1935(a); a conviction for burglary of an unoccupied conveyance, in

violation of Florida Statutes § 810.02(4)(B); and a conviction for third degree

grand theft, in violation of Florida Statutes § 812.014(2)(C).

In 2009, the Department of Homeland Security ("DHS") issued a Notice to

Appear ("NTA"), charging Adrien with removability, pursuant to the Immigration

and Nationality Act ("INA") § 237(a)(2)(A)(ii), 8 U.S.C. § 1227(a)(2)(A)(ii), for

being convicted of two crimes involving moral turpitude not arising out of a single

2

scheme of criminal conduct. Subsequently, the DHS filed a second charge of removal, alleging that Adrien was removable, pursuant to INA § 237(a)(2)(A)(i), 8 U.S.C. § 1227(a)(2)(A)(i), for being convicted within five years of admission of a crime involving moral turpitude, and for which a sentence of one year or longer could have been imposed. At an initial hearing, Adrien admitted the factual allegations in the second charge in the NTA and conceded removability as an alien who was convicted of a crime of moral turpitude within five years of admission.

## B.     Application for Withholding of Removal

In February 2010, Adrien filed an application for withholding of removal under the INA and CAT. Adrien alleged he feared harm or mistreatment if returned to Haiti because the Haitian government detains all criminal deportees upon arrival in Haiti, and Adrien, as an American deportee, would be singled out for exceptionally harsh treatment in a Haitian prison.

Either Adrien or the government submitted this documentary evidence: (1) Adrien's criminal history showing his aforementioned criminal convictions; (2) a New York Times article discussing the collapse of Haiti's mental health system after the 2010 Haitian earthquake; (3) Adrien's medical records from his time in DHS detention, showing his diagnosis of psychosis and his receipt of psychotic medication; (4) a U.S. Department of State 2009 Human Rights Report on Haiti

3

("2009 Country Report"); and (5) a U.S. Department of State 2008 Human Rights Report on Haiti ("2008 Country Report").[1]

## C.     Removal Hearings

At a March 2010 removal hearing, Adrien testified that he had "mental problems" for which he was taking medication and had received psychiatric treatment. Adrien sometimes heard voices, saw images and felt depressed. The voices told Adrien to kill himself because "they need[ed] [him] to come and live with them." As a result, the IJ continued removal proceedings to allow evidence of Adrien's mental condition to be gathered.

At a June 2010 removal hearing, Adrien testified that he began having mental problems in Haiti, that he was bipolar and had trouble answering questions and that he saw images, including images of his deceased father trying to kill him. Adrien believed that if he returned to Haiti he would suffer, and perhaps die, because Haiti does not have facilities to help people with his problems. If he were put in jail, Adrien would not be given food or water, and he had no one in Haiti who could bring food and water to him. The prison also would not have medical facilities to treat him.

## D.     IJ's Order

[1] Although the 2009 Country Report was prepared on March 11, 2010, it did not address the January 12, 2010 earthquake in Haiti.

The IJ found Adrien removable as a criminal alien, pursuant to INA § 237(a)(2)(A)(i), (ii), 8 U.S.C. § 1227(a)(2)(A)(i), (ii), denied Adrien withholding of removal under the INA, but granted withholding of removal under CAT. As to withholding of removal under the INA, the IJ determined that Adrien failed to establish that he would be persecuted on account of his mental illness. The IJ explained that the fact that life would be difficult for Adrien in Haiti because he would not be able to get medical care was not a ground for withholding of removal under the INA.

With regard to withholding of removal under CAT, the IJ noted that Adrien presented a "difficult case because we don't know what is going on in Haiti." The IJ pointed to the newspaper article, which indicated that, since the earthquake, mentally ill people were "being left to fend on their own." The IJ found that the 2009 Country Report was outdated, and that, because DHS had halted removals to Haiti after the earthquake, it was "not even clear that [the Haitian government] would detain criminal deportees." The IJ concluded that this Court's decision in Jean-Pierre v. U.S. Attorney General, 500 F.3d 1315 (11th Cir. 2007), established that severe mental problems combined with detention in Haitian prison "may be enough to meet the standard [under CAT]."

The IJ found that Adrien has "mental problems" and takes "anti-psychotic

medicine." Citing Jean-Pierre, the IJ stated that "people with mental problems are treated harshly by the authorities in [Haitian] prisons. One of the reasons is that in Haiti you have voodoo. They believe that people are possessed." The IJ noted that Adrien's medical records indicated that he engaged in anti-social behavior, heard voices and saw people trying to kill him. The IJ stated that Haitian prison officials "don't have the medicines to give" the mentally ill and that Adrien might act up without medication. Acknowledging that the "decision [was] hard to make in a vacuum," the IJ decided to "err on the side of humanitarianism" and found that Adrien had met the standard for withholding of removal under CAT.

E.    BIA's Decision Vacating the IJ's Order

Adrien did not appeal the IJ's decision. The government, however, appealed the IJ's grant of withholding of removal under CAT. Among other things, the government argued that (1) Adrien failed to show he would be subject to torture in Haiti or any nexus between his mental illness and being subject to torture, and (2) the IJ had misapplied Jean-Pierre.

The BIA sustained the government's appeal, vacated the IJ's grant of withholding of removal under CAT, and reinstated the IJ's removal order. Because the IJ did not make a credibility determination, the BIA presumed Adrien was credible. The BIA also found that the IJ's findings of fact—that Adrien was

mentally ill and that treatment for mental illness in Haiti was not available—were not clearly erroneous.[2] Nonetheless, the BIA determined that the IJ "concluded, incorrectly, that [Adrien] was eligible for protection under the Convention Against Torture."

The BIA explained that the IJ had "strung together a series of suppositions about what might be the situation in Haiti once the country [was] sufficiently stabilized for deportations to resume." Specifically, the IJ assumed that Adrien would come in contact with Haitian authorities even though there was no evidence that Adrien would be arrested or kept in jail as a criminal deportee.[3] The BIA concluded that the IJ improperly relied on Jean-Pierre as evidence that all mentally ill people will be tortured in Haiti and that Jean-Pierre instead stands for the general proposition that each applicant must prove that he will be singled out for torture. Accordingly, the BIA concluded that Adrien had not met his burden to show it was more likely than not that he personally would be tortured by the

---

[2]The 2009 Country Report indicated that due to widespread poverty and a shortage of public services, people with physical and mental disabilities were severely disadvantaged in Haiti. However, there were no reports of discrimination by the government against the disabled or of abuse in mental health facilities.

[3]According to the 2008 and 2009 Country Reports, repatriated Haitians were detained "upon their return for approximately two weeks." The 2009 report described this detention as "administrative quarantine" for returning citizens who "had local criminal charges pending or when local family members could not be located." The Haitian government was trying to improve these returnees' release time to ten days or less. Although Adrien claimed he has no family in Haiti, he has not claimed, much less proved, that he has local criminal charges awaiting him in Haiti.

Haitian government "because he did not show that it was more likely than not that he would be detained and would be singled out for torture." Adrien filed this petition for review.

## II. DISCUSSION

### A.    Jurisdiction to Review CAT Claim

On appeal, Adrien argues that the BIA erred in vacating the IJ's order granting him withholding of removal under CAT.[4]  Specifically, Adrien argues that his evidence showed he more likely than not would be subjected to torture if he were returned to Haiti.  We conclude, however, that we lack jurisdiction to review Adrien's CAT claim.[5]

Under the INA, federal courts lack jurisdiction to review final orders of removal "against an alien who is removable by reason of having committed" a crime involving moral turpitude, except to the extent the alien raises "constitutional claims or questions of law."  INA § 242(a)(2)(C), (D) 8 U.S.C. § 1252(a)(2)(C), (D).  Where such a criminal alien raises a constitutional claim or

---

[4]To the extent Adrien's opening brief challenges the IJ's denial of his request for withholding of removal under the INA and argues that he showed a pattern or practice of persecution of the mentally ill by Haitian jail officials, Adrien failed to exhaust this claim with the BIA, and we lack jurisdiction to review it.  See Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250-51 (11th Cir. 2006).

[5]We review de novo issues of subject matter jurisdiction.  Amaya-Artunduaga, 463 F.3d at 1250 (11th Cir. 2006).

question of law, we do not have jurisdiction to review the factual determinations made by the IJ or the BIA, but we retain jurisdiction to review the application of those undisputed facts to a legal standard. Jean-Pierre v. U.S. Att'y Gen., 500 F.3d 1315, 1320-22 (11th Cir. 2007). Thus, we have jurisdiction to review a claim that a particular set of facts meets the legal definition of torture under CAT. Id. at 1322. But, we lack jurisdiction to review "the administrative fact findings of the IJ or the BIA as to the sufficiency of the alien's evidence and the likelihood that the alien will be tortured if returned to the country in question." Singh v. U.S. Att'y Gen., 561 F.3d 1275, 1280 (11th Cir. 2009).

Adrien admits he is an alien removable by virtue of his prior convictions for crimes involving moral turpitude. As such, we have jurisdiction only to the extent Adrien raises a colorable constitutional claim or a question of law. See INA § 242(a)(2)(C), (D), 8 U.S.C. § 1252(a)(2)(C), (D). Adrien argues, like the alien in Singh, that his evidence was sufficient to show that he more likely than not will be tortured in Haiti. Thus, Adrien does not raise a constitutional claim or a question of law. See Singh, 561 F.3d at 1281 (explaining that an alien who "merely argues that he showed that it was more likely than not that he would suffer torture upon return to Jamaica" does not fall under the "constitutional claim or question of law" exception in INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D)). Accordingly, we

9

dismiss Adrien's petition for lack of jurisdiction to the extent he challenges the BIA's finding that he failed to show a likelihood that he would be tortured.

## B.     BIA's Standard of Review

Adrien also argues that the BIA erroneously vacated the IJ's order using a de novo standard of review rather than a clear error standard. We retain jurisdiction to review this legal question. See INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D).

Contrary to Adrien's argument, the BIA did not err in conducting a de novo review of whether Adrien met his burden of proof for CAT relief. Although the BIA must review an IJ's findings of fact for clear error, 8 C.F.R. § 1003.1(d)(3)(i), it "may review questions of law, discretion, and judgment, and all other issues in appeals from decisions of [the IJ] de novo." Id. § 1003(d)(3)(ii). In interpreting 8 C.F.R. § 1003(d)(3), the BIA has concluded that it reviews de novo the IJ's "application of a particular standard of law to those facts" and may "conclude that the foundation for the [IJ's] legal conclusions was insufficient or otherwise not supported by the evidence of record." In re A-S-B-, 24 I.&N. Dec. 493, 496, 497 (BIA 2008) (applying de novo review to whether alien established future persecution for purposes of withholding of removal under INA); see also H-L-H- & Z-Y-Z-, 25 I.&N. Dec. 209, 212-13 (BIA 2010) (applying de novo review to

whether alien established future persecution for purposes of asylum).[6]

Here, the BIA accepted Adrien's testimony as credible and concluded that the IJ's fact findings were not clearly erroneous. The BIA concluded that these adjudicated facts were insufficient to establish eligibility for CAT relief because there was no evidence that Haitian officials were likely to detain Adrien at all after the earthquake and thus it was speculation whether Adrien would likely be subjected to conditions in a Haitian prison that amounted to torture. We find no error in the BIA's application of de novo review.

**DISMISSED IN PART; DENIED IN PART.**

---

[6]Adrien does not argue that the agency's interpretation of its own regulations is not entitled to deference. See Assa'ad v. U.S. Att'y Gen., 332 F.3d 1321, 1326 (11th Cir. 2003) (explaining that we defer to the agency's "interpretation of its own regulations unless that interpretation is plainly erroneous or inconsistent with the regulation").