In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-3142

SALADIN ABDEL JAWAD,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General of
the United States,

*Respondent.*

Petition for Review of a Final Order of the
Board of Immigration Appeals
No. A076 785 120.

ARGUED APRIL 11, 2012—DECIDED JULY 10, 2012

Before WOOD, WILLIAMS, and TINDER, *Circuit Judges.*

WOOD, *Circuit Judge.*  Saladin Abdel Jawad, a Jordanian
citizen, petitions this court for review of a decision by
the Board of Immigration Appeals ordering his re-
moval from the United States.[1] The Board, agreeing with

---

[1] The Board noted that Jawad also spelled his name
"Abdeljawad" in certain documents; this may account for the
(continued...)

the Immigration Judge (IJ), found that Jawad had lied about the *bona fides* of his marriage to a U.S. citizen and had thus engaged in immigration fraud. Jawad urges now that the IJ erred by failing fully to take into account the testimony of his daughter, Elham Abdeljawad; had he done so, Jawad believes, the marriage would have been seen to be genuine. But all this is just to say that Jawad wishes that the IJ and the Board had weighed the evidence differently. Finding no tenable legal issue in his petition for review, we must dismiss for lack of jurisdiction.

**I**

Jawad's non-immigrant visitor visa expired in February 1987, but he has managed to remain in the United States throughout the quarter century that has elapsed since then. He originally entered the country in June 1986 with his wife, Majidah, and their young son Sadek. Over the next 12 years, they had five more children, all born in the United States. In March 1998, however, Jawad and Majidah divorced. Six months later, Karen Blankenship, a United States citizen, filed an I-130 visa petition on Jawad's behalf. The petition represented that she and Jawad had married on March 31, 1998, in Chicago, Illinois.

---

[1] (...continued)
way in which his daughter's name is spelled in the record. We follow the spellings used by the Immigration Judge.

As a routine part of their evaluation of the I-130 petition, Chicago immigration officials conducted an interview with Jawad and Blankenship to determine whether they had entered into the marriage in good faith. The interviewing officer suspected that marriage fraud might be afoot and consequently recommended their case for further investigation. Blankenship later admitted to immigration officials that the marriage was indeed fraudulent. It was, in fact, a mutually beneficial deal: Jawad agreed to pay Blankenship $10,000, and Blankenship promised to seek immigration benefits for Jawad based on the marriage. While the government's investigation was ongoing, Jawad and Blankenship split up. Some time later, the government formally denied Jawad's visa petition.

After ending his relationship with Blankenship, Jawad bought a home and invited his ex-wife Majidah and their six children to move in with him. He did not file for divorce from Blankenship because he was worried that such a move would affect his immigration case. Jawad was eventually served with a Notice to Appear, which charged that he was removable under Immigration and Nationality Act (INA) § 212(a)(6)(C)(i) for two reasons: he had remained in the country on an expired visitor visa; and he had fraudulently entered into a marriage to secure an immigration benefit. Jawad admitted at the removal hearing that he was removable under § 237(a)(1)(B), but he requested cancellation of removal under § 240A(b).

Four years after these proceedings began, the United States Citizenship and Immigration Services (CIS) ap-

proved a new immediate-family visa petition for Jawad; this petition had been filed on his behalf by his daughter Elham Abdeljawad, who is a United States citizen. She filed the petition one week following her 21st birthday. In light of Elham's application, Jawad filed a request for cancellation of removal and an application for adjustment of status pursuant to § 245(a) of the Act. The government responded with evidence that the Blankenship marriage had been fraudulent, designed primarily to secure immigration benefits.

At his hearing, Jawad testified that he worked as a flea market vendor and earned about $20,000 per year. He met Blankenship in 1991 when she was a customer at the flea market. His story was that he married Blankenship because he wanted to have a sexual relationship with her—something that his religion permitted only if they were married. Jawad testified that he did not promise Blankenship money in exchange for the marriage, but he did admit that he supported her financially during their relationship because she was unemployed. He claimed that he slept at Blankenship's apartment two or three times a week during the early months of their relationship. During the first two years of their marriage, he stated, they had sex frequently. When he did not sleep at Blankenship's apartment, he stayed with his ex-wife and children. Soon, however, he ended his overnight stays with Blankenship. When asked to explain his statement to the interviewing official that he and Blankenship were living together as husband and wife, when in truth he no longer slept at her apartment, Jawad responded that he visited her every day.

Other facts also did not add up. For instance, Jawad did not know Blankenship's birthday, guessing that it was March 17 or in the spring, when it is actually July 5. He testified that he ended their relationship in 2001 because she drank too much alcohol and they often argued.

Blankenship's account differed considerably from Jawad's. She stated that she first met Jawad a couple of years before their marriage, when she worked for him at the flea market. After they became friends, Blankenship decided to try to help him avoid deportation. He offered her $10,000 if she married him and helped him gain citizenship, and she agreed. She remembered that Jawad brought her a ring on their wedding day, which she then gave to Majidah after briefly wearing it first. She stated that they never lived together as husband and wife. Although they did have a brief sexual relationship, Blankenship estimated that this was limited to less than five encounters. She did not tell her family about the marriage until 2004, when she told her father about it shortly before his death.

Jawad's daughter, Elham Abdeljawad, also testified at her father's hearing. She was in fifth grade when Jawad and her mother Majidah got divorced. She thought that the divorce had been precipitated by Majidah's discovery that there was another woman in her father's life. While she was reluctant to accept Blankenship at first, she eventually began to enjoy spending time with her. She recalled visiting Blankenship's apartment four times.

As between Jawad and Blankenship, the IJ found Blankenship the more credible witness, primarily be-

cause she was not promised protection from criminal liability for her testimony. She had no incentive to admit to committing immigration fraud other than simply to tell the truth. She provided consistent details about the financial transaction in her sworn statement and at the hearing. The IJ concluded that "[a]lthough she was paid to commit fraud, she had only the best of intentions." Jawad did not leave a similarly favorable impression on the IJ. The judge found that there was no evidence to corroborate Jawad's characterization of the marriage or his claim that no financial transaction took place. Unlike Blankenship, Jawad had a strong motive to lie because he wanted to remain in the country. And, contrary to the impression Jawad gives in his petition in this court, the IJ found that Elham's testimony was not helpful in resolving the testimonial discrepancies because she was so young at the time of Jawad and Blankenship's relationship (just 12 years old).

Jawad's credibility was critical to his applications for adjustment of status and cancellation of removal. The IJ was required to conduct parallel discretionary analyses for both requests. *Matter of C-V-T-*, 22 I & N Dec. 7, 11 (BIA 1998); *Matter of Marin*, 16 I & N Dec. 581, 584-85 (BIA 1978). With respect to adjustment of status, the IJ had to "balance the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf to determine whether the granting of . . . relief appears in the best interest of this country." *Marin*, 16 I & N Dec. at 584. Similarly, Jawad's request for cancellation of removal under § 249A(b) required the IJ to

determine whether Jawad "has been a person of good moral character" during the 10 years immediately preceding the service of the charging documents. INA § 240A(b)(1), 8 U.S.C. § 1229b(b)(1). The IJ decided that Jawad failed to show he merited a favorable exercise of discretion for either request because he committed immigration fraud and gave the court false testimony.

Jawad appealed the adverse rulings to the Board, arguing that the IJ ignored evidence and was biased against him. The Board was not persuaded by these assertions and dismissed the appeal. It rejected Jawad's attacks on the IJ, emphasizing that Blankenship and Jawad had provided inconsistent testimony on the nature of their relationship. Jawad subsequently petitioned this court for relief. Before us, he has recast his argument as an assertion that the IJ and the Board violated his statutory right to present evidence by "ignoring" Elham's testimony.

## II

The first question before us is whether we have jurisdiction to consider Jawad's petition for review. Under 8 U.S.C. § 1252(a)(2)(D), the court of appeals may review only constitutional claims and questions of law. The Board argues that there are no such legal claims, and to the extent Jawad might have described one, it was not properly exhausted and thus beyond our jurisdiction for that reason. We would have little to add to the Board's first, and potentially dispositive, point were it not for

Jawad's assertion in his briefs before the Board and this court that the IJ "ignore[d] Elham's testimony" and that her testimony "was dismissed by the Judge with virtually no consideration."

By allegedly ignoring Elham's testimony, the IJ and the Board (in Jawad's view) violated his statutory right to present evidence. 8 U.S.C. § 1229a(b)(4). And it is true that we have granted petitions for review in immigration cases where the Board and the IJ have ignored evidence or have failed to address necessary elements of a legal analysis. *Iglesias v. Mukasey*, 540 F.3d 528, 531 (7th Cir. 2008) (emphasizing that the "failure to exercise discretion or to consider factors acknowledged to be material to such an exercise—such as the wholesale failure to consider evidence—would be an error of law" (quotation marks omitted)); *Champion v. Holder*, 626 F.3d 952, 957 (7th Cir. 2010) (finding that "the BIA erred by failing to consider the impact of Yomi's potential deportation" and remanding "for the BIA to address this critical component of the hardship analysis").

Unfortunately for Jawad, however, even a cursory look at the record reveals that in his case, unlike in *Iglesias* or *Champion*, the IJ did not ignore Elham's testimony or skip any steps in the legal analysis. To the contrary, the IJ described Elham's testimony in detail and evaluated its relevance. Jawad now seeks to recast his frustration with the IJ's factual findings as error, but his efforts are unavailing. As the old saying goes, you can't make a silk purse out of a sow's ear, and, as both we and our sister circuits have repeatedly held, a

petitioner can't manufacture a legal dispute over a disagreement on the facts. *Jezierski v. Mukasey*, 543 F.3d 886, 890 (7th Cir. 2008); *Adrien v. U.S. Att'y Gen.*, 446 F. App'x 172, 176 (11th Cir. 2011); *Kamara v. Holder*, 368 F. App'x 720, 721 (9th Cir. 2010); *Lakhavani v. Mukasey*, 255 F. App'x 819, 821 (5th Cir. 2007).

We conclude that we lack jurisdiction over Jawad's petition for review, as it presents nothing within the scope of 8 U.S.C. § 1252(a)(2)(D) that would cause us to examine the agency's discretionary denial of adjustment of status and cancellation of removal. The petition for review is therefore DISMISSED.