**F I L E D**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

NABIN BASNET

        Petitioner,

v.

ALBERTO R. GONZALES,  *

        Respondent.

No. 03-9551
(A76-670-344)
Petition for Review

---

**ORDER AND JUDGMENT**  **

---

Before **KELLY** , **SEYMOUR** , and **MURPHY** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

\*     On February 4, 2005, Alberto R. Gonzales became the United States
Attorney General. In accordance with Rule 43(c)(2) of the Federal Rules of
Appellate Procedure, Mr. Gonzales is substituted for John Ashcroft as the
Respondent in this action.

\*\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Nabin Basnet petitions for review of the decision of the Board of Immigration Appeals (Board) that denied his application for asylum, restriction on removal (formerly withholding of removal) under the Immigration and Nationality Act (INA), and protection under the Convention Against Torture (CAT). We have jurisdiction under 8 U.S.C. § 1252(a)(1), and grant the petition for review.

Background

Basnet, born in January 1970, is a native and citizen of Nepal. Admin. R. at 53. Until he left that country in August 1996, he lived in Kathmandu with his wife and parents. Id. at 54, 78. At the time the record before us was compiled in 1997-98, Nepal was a constitutional monarchy embroiled with internal conflict caused by the extreme poverty of the majority of its citizens.

In 1995, Basnet became disenchanted with corruption in the government and began attending meetings of the Communist Party of Nepal (Maoist) ("Maoists") because he believed the Maoists were working for the people. Id. at 57-58, 73, 168. He formally joined them for about six months beginning in late 1995 or early 1996. Compare id. at 57, 168, with id. at 73-74. But the Maoists declared a "People's War" in February 1996, making clear that their goal was to overthrow the government by violence. E.g., id. at 98, 102, 108, 110-112, 115, 119. Basnet said that the Maoists were not violent in the beginning, id. at 71, but they eventually tried to send him out of Kathmandu to kill people, id. at 58-59,

-2-

69-70. He never committed any acts of violence, id. at 72, and, on May 10, 1996, told a local group leader, Shridar Lamsal, that he intended to withdraw from the group. Id. at 60-61, 64. Lamsal told Basnet that withdrawal was not an option and that if he did not follow their rules and regulations, he might be killed. Id. at 61, 168. Basnet said he believed this threat because the Maoists were in fact killing people. Id. at 61-62.

After Basnet told Lamsal his intentions, he received more than twenty threatening telephone calls from Maoists–presumably because they feared he would become an informant to the government or others. Id. at 62-63, 168. He did not receive all of the messages personally; other family members answered some of the calls. Id. Nevertheless, the consistent message was: "You can be killed. You cannot leave these things. You can be killed." Id. at 63. Basnet remained at his parents' home for a few days, and then moved in with a friend for about a month, where he stayed indoors all day to avoid detection. Id. at 63-64, 78.

At the same time that the Maoists were threatening Basnet, the Nepalese police went to his parents' house with a warrant to arrest him as a suspected Maoist. Id. at 65. Basnet was able to avoid arrest because an uncle who worked in the police department warned his parents ahead of time. Id. at 65-66. He feared the police because they had "disappeared" suspected Maoists. Id. at 67.

With the help of another uncle, Basnet quickly obtained a passport and visa and left Nepal on August 12, 1996. Id. at 67, 68, 168. He believes that either the Maoists or the Nepalese government, or both, will persecute him if he is returned to Nepal. Id. at 69.

Basnet legally entered the United States as a student on August 13, 1996. He maintained a full course load but when he ran out of money, he took a summer job without authorization, and was charged on June 17, 1997, with being removable for that reason. He then applied for asylum, restriction on removal, and protection under the CAT. He said he did not apply for such protection earlier because he felt safe being in the United States as a student. Id. at 68.

In addition to his testimony before the immigration court, Basnet submitted his passport and pages from two editions of a weekly Nepali-language newspaper that included articles commenting on his involvement with the Maoists. Id. at 66-67, 95, 96, 155-56, 159-60. The first article, dated May 14, 1996, bears the headline: " Warrant issued against Maoist Activists ," and states that the Maoists were now active in the Kathmandu valley and that warrants had been issued for the arrest of several members of the group, including Basnet. Id. at 158. The second article, dated June 9, 1996, is titled: " Alienation in Maoist Movement ," and states that some Maoist activists, including Basnet, were leaving the party

-4-

because of its violence and terrorism, that they had been threatened by the Maoists, and that Basnet had gone into hiding.      Id. at 154.

### The Agency's Decisions

To determine whether the newspapers and passport had been altered, the documents were submitted to the State Department's forensic document laboratory for examination.      Id. at 94.  The lab issued a brief report, stating that Basnet's passport conformed to its samples on file, but the lab had no examples to which it could compare Basnet's newspapers.      Id. at 88.  As a result, the lab reached no conclusion about whether Basnet's newspapers were genuine.      Id. It noted, however, that although they were not printed on standard newsprint, there was no evidence of trim lines or photograph substitution.      Id.

The immigration judge (IJ) found that Basnet was not credible and denied all relief except voluntary departure.  On appeal, the Board, acting through an individual member, issued a short decision under 8 C.F.R. § 1003.1(e)(5) that affirmed the IJ's decision.  Admin. R. at 2-4.  The Board reversed the IJ's adverse credibility determination, but it still rejected Basnet's evidence of threatening phone calls, ostensibly due to lack of sufficient detail because he could not identify the callers; rejected as vague Basnet's testimony that the government tried to arrest him; and rejected his newspaper articles as unauthenticated, citing 8 C.F.R. § 1208.13(a) and    In re S-M-J , 21 I. & N. Dec. 722 (BIA 1997).  Admin.

-5-

R. at 2-3.  The Board expressly declined to reject the newspaper articles due to not being printed on standard newsprint or because they aggrandized Basnet's position,  id.; instead, it relied on a general statement in an advisory opinion from the State Department that documents from Nepal are frequently fabricated,      id. at 3, 87.  Moreover, the Board did not specifically address the death threat that Basnet received in person from the local Maoist leader, Shridar Lamsal, but nevertheless concluded that Basnet had not established "a plausible and coherent account of the basis of his fear."      Id. at 2.

### Issues on Appeal

Basnet argues that:  (1) he demonstrated his eligibility for asylum by establishing through clear, detailed, and consistent testimony that there is a reasonable possibility that he will face the harshest sanction from either the Maoists or the government if he returns to Nepal; (2) the Board erroneously decided that his evidence was insufficient to meet his burden of proof without referring to substantial testimony or documentation to support its conclusions; and (3) the IJ and the Board gave dispositive weight to a fundamentally flawed advisory opinion as to the authenticity of his documentary evidence and failed to take investigatory steps which could establish the authenticity of his evidence, improperly concluding that he was required to present additional evidence to meet his burden of proof.

-6-

Based on our review of the record in light of the controlling law, we conclude that Basnet's arguments directed at the denial of asylum have merit. Because Basnet makes no specific request for relief related to his applications for withholding of removal or protection under the CAT, however, we do not address those claims. Although we lack the authority to grant asylum, as Basnet requests, we do have the authority to remand the case for further proceedings consistent with this order and judgment. INS v. Orlando Ventura, 537 U.S. 12, 16 (2002).

<u>Discussion</u>

To obtain asylum, Basnet must first prove that he is a "refugee" as defined in 8 U.S.C. § 1101(a)(42)(A), and then persuade the Attorney General to exercise his discretion to grant asylum. See Yuk v. Ashcroft, 355 F.3d 1222, 1232-33 (10th Cir. 2004). A "refugee" is a

> person who is outside [his] country of . . . nationality . . . who is unable or unwilling to return to, and is unable or unwilling to avail himself . . . of the protection of, that country because of persecution or a <u>well-founded fear of persecution</u> on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A) (emphasis added). To satisfy the "well-founded fear" standard, Basnet need only show that persecution is "a reasonable possibility"; "a 10% chance of being shot, tortured, or otherwise persecuted" is enough to show a well-founded fear of persecution under § 1101(a)(42)(A). INS v.

-7-

Cardoza-Fonseca, 480 U.S. 421, 440 (1987) (quotation omitted); see also Nazaraghaie v. INS, 102 F.3d 460, 462 (10th Cir. 1996). Basnet does not need to show that he "may be singled out for persecution to establish that he has an objectively well-founded fear of persecution; he may do so by demonstrating his membership in a group determined by 'race, religion, nationality . . . or political opinion' or 'a particular social group' subject to 'a pattern or practice of persecution.'" Wiransane v. Ashcroft, 366 F.3d 889, 893 (10th Cir. 2004) (quoting 8 C.F.R. § 208.13(b)(2)(iii)(A)). "In other words, an applicant is permitted to show that a person in his position, as opposed to himself specifically, could be subject to persecution." Id. (quotation omitted).

The crux of Basnet's appeal is the Board's credibility determinations. Although the Board stated that it found Basnet credible, it found not credible his testimony of more than twenty telephone calls by Maoists threatening his life, the attempt to arrest him by the Nepalese police, and the two newspaper articles.

In light of the background information in the record, the evidence the Board found not credible is crucial to Basnet's asylum claim. The State Department's Country Report for 1997 states that incidents related to the "People's War" had already occurred in more than one-third of the country's districts, id. at 118, that Maoist insurgents had committed abuses such as torture, killings, bombings, and mutilation, id. at 118-120, and that government forces had

-8-

committed abuses such as unjustified killings, torture, arbitrary arrest and detention, overcrowding of prisons, and long delays in bringing prisoners to trial, id. It also states that the Maoists "have most often targeted political leaders, local elites, and  suspected informers ." Id. at 120 (emphasis added).  Newspaper articles as recent as July 1998 also report these sorts of abuses on both sides of the "People's War."   See id. at 98-107.  An Amnesty International report from July 1998 states that the Nepalese police engaged in "murder, torture, 'disappearances' and the arbitrary detention of suspected members of the Communist Party of Nepal (CPN) (Maoist)," id. at 108; and that both sides had resorted to killing people they considered to be their enemies, id.

"[A]n applicant's testimony, 'if credible . . . may be sufficient to sustain [his] burden of proof without corroboration.'" Wiransane , 366 F.3d at 897 (quoting 8 C.F.R. § 208.13(a)).  Credibility determinations are factual findings, and are therefore "subject to the substantial evidence test." Elzour v. Ashcroft , 378 F.3d 1143, 1150 (10th Cir. 2004).  Therefore, the Board's adverse credibility determinations must be "substantially reasonable," Sviridov v. Ashcroft , 358 F.3d 722, 727 (10th Cir. 2004) (quotation omitted), and the Board "must give 'specific, cogent reasons' for disbelieving [the alien's] testimony," Elzour , 378 F.3d at 1150 (quoting Sviridov , 358 F.3d at 727).  "An IJ's adverse credibility determination may appropriately be based upon such factors as inconsistencies in the witness'

testimony, lack of sufficient detail, or implausibility," id. at 1152, but "[a]dverse credibility determinations based on speculation or conjecture are reversible," Wiransane , 366 F.3d at 898. In addition, this court is bound by the reasons given by the agency, and may not affirm on other grounds. Mickeviciute v. INS , 327 F.3d 1159, 1162-63 (10th Cir. 2003). Our review in this case is therefore limited to the Board's conclusion that Basnet had not established "a plausible and coherent account of the basis of his fear," Admin. R. at 2. See Elzour , 378 F.3d at 1150-51. If the agency "decides a case on a ground believed by an appellate court to be wrong, the case has to be remanded to the agency." Id. at 1150 (quotation omitted); accord Mickeviciute , 327 F.3d at 1165-66.

The same standard for credibility determinations applies to documentary evidence. See Zahedi v. INS , 222 F.3d 1157, 1165 (9th Cir. 2000). "With respect to documentary evidence then, when rejecting the validity of a document admitted into evidence, [the Board] must provide a specific, cogent reason for rejecting it, and this reason must bear a legitimate nexus to that rejection." Id. In addition, the mere failure to authenticate a document does not constitute a sufficient foundation for an adverse credibility finding in the absence of evidence undermining the reliability of the document. See Wang v. INS , 352 F.3d 1250, 1254 (9th Cir. 2003).

Basnet argues, first, that the Board erroneously rejected his testimony about the threatening telephone calls because he could not identify the callers, relying on an expectation that "has no basis in either the record or simple common sense." Aplt. Br. at 22. We agree. The Board's reasoning, while specific, is not cogent because nothing in the record or common sense shows that Basnet should have been able to identify people threatening his life over the telephone or that they identified themselves. The Board's rejection of his testimony about the threatening calls is not supported by substantial evidence.

Basnet argues, second, that the Board's rejection of his testimony about the attempted arrest on the basis that it was "vague" failed to acknowledge that Basnet was not at his parents' home at the time and never claimed to have seen the arrest warrant. Aplt. Br. at 22; Admin. R. at 3. We again agree. The Board's one-line explanation on this point was itself vague because it rejected Basnet's testimony about the attempted arrest without providing any specific reason why the testimony was not credible. See Admin. R. at 3. Because the Board's explanation was not specific and cogent, it was error.

Basnet argues, third, that the Board erroneously rejected the Nepali-language newspaper articles showing that he was threatened by the Maoists and was also sought by the Nepalese government based on a "bald assertion" in an advisory opinion from the State Department that documents

-11-

from Nepal are frequently fabricated. Aplt. Br. at 24-25; see Admin. R. at 87. We agree. The advisory opinion states expressly that it is not based on any information about Basnet individually, and fails to explain what documents are fabricated, what kind of fabrication occurs, what types of claims fabricated evidence is employed in, or the source of the State Department's opinion. See Admin. R. at 87. Moreover, the advisory opinion misstates that the document was an arrest warrant, instead of a newspaper article about an arrest warrant. See id. For all of these reasons, we do not consider the advisory opinion to constitute substantial evidence to support the Board's rejection of Basnet's newspapers. In addition, the forensic document laboratory's report gave no indication of fabrication, see id. at 88; the Board declined the State Department's offer to send the newspapers to the American Embassy in Kathmandu for authentication, see id. at 87; and neither of the Board's cited authorities, 8 C.F.R. § 1208.13(a) and In re S-M-J, discusses the authentication of documents. Basnet corroborated his claim by submitting pages from two newspapers, and he authenticated them by stating that he saw them while he was still in Nepal, see Admin. R. at 66. We note that these exhibits are not merely articles excerpted from newspapers; they are pages from two newspapers, which include articles mentioning Basnet. See id. at 155-56, 159-60. The exhibits include the front pages of the newspapers, which show dates of May 14, 1996, and June 9, 1996–showing that both papers

-12-

were issued before Basnet left Nepal.     See id. at 153-160.  Indeed, it appears that Basnet had the articles translated into English at a law office on June 25, 1996, before he left Nepal.     See id. at 153, 157.  In addition, the translator's certification and translation of the articles about Basnet includes such facts as the name of the newspaper, the volume and register numbers, and the editor's name and phone number.     See id. at 153-54, 157-58.  The Board did not comment on these indicia of authenticity, and did not provide any reason to doubt that the newspapers are what they purport to be.  The Board's explanation for rejecting the newspapers is therefore not supported by substantial evidence.     See Wang, 352 F.3d at 1254.

Basnet argues, finally, that the Board's conclusions that he failed to show that he was a Maoist or Maoist deserter and has been singled out for persecution are conclusory and unsupported by the record.  Aplt. Br. at 29.  In light of our conclusion that the Board erroneously rejected important portions of Basnet's evidence, we remand for additional proceedings without deciding whether he has met his burden to prove refugee status.  We conclude only that the Board's adverse credibility determinations are not supported by substantial evidence. See Elzour, 378 F.3d at 1154.

The petition for review is granted, and the case is remanded for additional proceedings.

-13-

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge