**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 3, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

NIRMAL PYAKUREL,

      Petitioner,

v.

LORETTA E. LYNCH, United States
Attorney General,[*]

      Respondent.

No. 14-9544
(Petition for Review)

_____

**ORDER AND JUDGMENT**[**]
_____

Before **LUCERO**, **MATHESON**, and **PHILLIPS**, Circuit Judges.
_____

Nirmal Pyakurel seeks review of a Board of Immigration Appeals (BIA) order

affirming an immigration judge's decision denying his application for asylum,

withholding of removal, and protection under the Convention Against Torture (CAT).

Exercising jurisdiction under 8 U.S.C. § 1252(a)(1), we deny Pyakurel's petition for

review.

_____

[*] In accordance with Fed. R. App. P. 43(c)(2), Loretta E. Lynch is substituted
for Eric H. Holder, Jr., as the respondent in this action.

[**] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    FACTUAL BACKGROUND

Pyakurel, a citizen of Nepal, first entered the United States on July 19, 2008, as a non-immigrant visitor authorized to remain until January 18, 2009. On July 13, 2009, still residing in the United States, Pyakurel filed an application for asylum, withholding of removal, and protection under the CAT, testifying that he could not return to Nepal for fear of persecution from the Maoists.[1]

In Nepal, Pyakurel was a well-known actor, documentary filmmaker, script writer, and author. Although Pyakurel "adopted a literary style which was satirical and therefore not complimentary to the Maoists," he is not involved in any political party in Nepal and testified that neither he nor his family directly opposes the Maoists. R. at 95. In his application for asylum, though, Pyakurel argued that various encounters he and his family had with the Maoists between 2003 and 2008 rose to the level of past persecution or established a well-founded fear of persecution upon any return to Nepal.

In 2003, Pyakurel received a threatening telephone call at home from a man who identified himself as a Maoist. The caller said, "[Y]ou are going against us, so we will not leave you alone." R. at 93. Mrs. Pyakurel testified that she and Pyakurel "did not take [the call] seriously." R. at 93.

More than six months later, Pyakurel met with the Maoists face-to-face. He testified that the Maoists had approached him and asked him to accompany them to

---

[1] We note that Mr. Pyakurel's wife, Anjani Pyakurel, is a derivative beneficiary of Mr. Pyakurel's application for asylum. Her asylum claim rests on Mr. Pyakurel's claim. 8 U.S.C. § 1158(b)(3); 8 C.F.R. § 1208.3(a).

an undisclosed location.[2] After a two-hour conversation about a book Pyakurel was writing, the Maoists asked him to join their party. After he asked for time to think about it, they agreed and took him back to where they first approached him. Although Pyakurel testified that he voluntarily complied, he felt he was not free to refuse the Maoists' invitation and characterized the incident as being kidnapped. Pyakurel testified that after this incident he went "underground," which resulted in an 80% decrease in his professional workload. R. at 5 n.4. Pyakurel also testified that he and his family had fewer contacts with the Maoists after the kidnapping.

In 2008, two Maoists approached Pyakurel as he worked on a movie set and asked him to prepare a video promoting their cause. Pyakurel declined, citing a lack of time, and the two Maoists became angry, kicking the lights and camera on set. After this incident, Pyakurel returned to his home and family in Kathmandu.

Pyakurel testified that the Maoists called his wife at least one other time and, another time, searched his home and pushed his wife. Pyakurel also testified that someone threw rocks at his home during a rally after the 2008 national election. After the Maoists won the election, Pyakurel came to the United States with his wife and one of his sons, leaving his eldest son in Nepal to look after the family's property in Kathmandu. In 2010, members of the Young Communist League (YCL), a Maoist-affiliated organization, physically assaulted Pyakurel's eldest son in Nepal. His son

_____

[2] The BIA order does not describe Pyakurel's kidnapping in significant detail. We note, however, that the BIA cites to Pyakurel's testimony, which describes how the Maoists blindfolded him and drove him to a location about thirty minutes away from where they had first approached him. They blindfolded him on the return trip, too.

did not require medical attention, and Pyakurel did not know why the YCL members had attacked his son, although his son said that a few of the members "remarked that he was the 'son of an actor'" before the assault. R. at 94–95.

Citing these encounters with the Maoists and his suspected placement on a "blacklist," Pyakurel says that he would not feel secure returning to Nepal. R. at 95.

## II.  AGENCY DECISIONS

On November 4, 2011, an immigration judge (IJ) orally denied Pyakurel's application for asylum. The IJ found the Pyakurels' testimony "essentially credible and truthful as to facts within their personal knowledge," but also found they had embellished certain facts about which they had no personal knowledge. R. at 96–97. Despite crediting their testimony, the IJ concluded that "the respondents have not suffered harm sufficient to rise to the level of persecution." R. at 97. The IJ also concluded that Pyakurel had not proved a well-founded fear of future persecution. The IJ concluded that the Maoists were interested in his potential contribution to their organization, not in harming him because of any of his political opinions or social-group memberships.

On April 2, 2014, a single member of the BIA affirmed the IJ's decision in a brief, four-page order. The BIA agreed with the IJ's conclusion that Pyakurel's "testimony about being detained in 2004 for a short period and [being] asked to support the Maoist[] party did not amount to persecution." R. at 4. Specifically, the BIA concluded that Pyakurel had not experienced past persecution because the Maoists had not physically harmed him, and he "was able to secure his own release

4

by asking for 'additional time to think about it.'" R. at 4. The BIA also considered the intermittent telephone calls and harassment between 2003 and 2008, but found that the Pyakurels' experiences in Nepal, "viewed individually or cumulatively," "were not severe enough to meet the standard for persecution." R. at 4. Finally, the BIA agreed with the IJ that the Pyakurels had failed to show they had an objectively reasonable fear of future persecution because they "did not demonstrate a pattern or practice of persecution against a group of similarly situated people on account of a protected ground." R. at 4 n.3.

## III. DISCUSSION

### A. Standard and Scope of Review

When a single member of the BIA enters a brief affirmance order under 8 C.F.R. § 1003.1(e)(5), as here, we review the BIA's decision as the final order of removal and "will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). But "we may consult the IJ's opinion to the extent that the BIA relied upon or incorporated it." *Sarr v. Gonzales*, 474 F.3d 783, 790 (10th Cir. 2007).

We review de novo the BIA's conclusions of law, but we review its findings of fact under the substantial-evidence standard. *Karki v. Holder*, 715 F.3d 792, 800 (10th Cir. 2013). Under this standard, "our duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th

5

Cir. 2004). Thus, "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## B. Asylum and Withholding of Removal

To qualify for a discretionary grant of asylum, Pyakurel must prove he is a refugee. *Karki*, 715 F.3d at 800. He can establish refugee status only by: (1) "showing past persecution, which creates a rebuttable presumption of a well-founded fear of future persecution"; (2) "showing 'past persecution so severe as to demonstrate compelling reasons for being unwilling or unable to return,' even without any danger of future persecution"; or (3) "showing a well-founded fear of future persecution." *Id.* at 801 (quoting *Krastev v. INS*, 292 F.3d 1268, 1270–71 (10th Cir. 2002)). Upon showing persecution, a petitioner must also establish that "race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting" him. 8 U.S.C. § 1158(b)(1)(B)(i).

We cannot say on this record that Pyakurel's encounters with the Maoists compel the conclusion that he has suffered past persecution or has a well-founded fear of future persecution. On the contrary, we find substantial evidence in the record to support the BIA's determinations. Therefore, we affirm the BIA order denying asylum and withholding of removal.

6

### 1. *Past Persecution*

Substantial evidence supports the BIA's determination that Pyakurel failed to establish past persecution. "Persecution is 'the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive and requires more than just restrictions or threats to life and liberty.'" *Chaib v. Ashcroft*, 397 F.3d 1273, 1277 (10th Cir. 2005) (quoting *Woldemeskel v. INS*, 257 F.3d 1185, 1188 (10th Cir. 2001)). Given this standard, the telephone calls Pyakurel and his family received over a five-year period, standing alone, certainly do not constitute persecution. The BIA credited Pyakurel's account that the Maoists had harassed him and his family with telephone calls and personal visits. But it concluded that these actions did not establish persecution, because they decreased over time and not even the Pyakurels took some of the threats seriously. The significance of the Maoist encounters declines somewhat when considered in the context that the encounters all but stopped after 2008—or 2010 if one assumes that the eldest son's beating related to the previous Maoist encounters. *See Vatulev v. Ashcroft*, 354 F.3d 1207, 1210 (10th Cir. 2003) ("[T]he sheer length of time—nearly ten years—that has passed since receipt of that threat diminishes its present significance."). The BIA also considered and properly rejected Pyakurel's argument that his going underground had resulted in economic persecution, concluding that a reduction in workload is insufficient. *See Zhi Wei Pang v. Holder*, 665 F.3d 1226, 1231–32 (10th Cir. 2012) (noting that economic persecution is persecution that "jeopardize[s] [one's] life or

7

freedom" and rises to the level of "large-scale confiscation of property due to [one's] political opinion").

Similarly, substantial evidence supports the BIA's conclusion that Pyakurel's two-hour detention did not constitute persecution. Kidnapping alone may not constitute persecution, especially where the kidnapping does not involve extended periods of detention or serious bodily injury. *Compare Kapcia v. INS*, 944 F.2d 702, 704, 708 (10th Cir. 1991) (finding no past persecution even where asylum applicant had been detained twice for two-day periods during which he was beaten and interrogated, his parents' home had been searched, his work locker had been repeatedly broken into, he received unfavorable work assignments and no bonuses, and he was conscripted into the army and constantly harassed there), *with Nazaraghaie v. INS*, 102 F.3d 460, 463–64 (10th Cir. 1996) (suggesting asylum applicant's beating and ten-month imprisonment constituted non-severe past persecution). The BIA found that Pyakurel's lack of physical injury, relatively short detention, and ability to procure his own release weighed against a finding of past persecution. Given the more severe harm that did not constitute persecution in *Kapcia*, the evidence here compels the same conclusion.

Still, Pyakurel argues on appeal that the BIA failed to cumulatively examine all of his family's interactions with the Maoists when deciding whether he had met his burden of showing past persecution or a well-founded fear of future persecution. But the BIA order proves otherwise. Specifically, the BIA noted the kidnapping, considered the evidence that the Pyakurels "were periodically harassed and received

anonymous telephone calls between 2003 and 2008," described why the beating of the Pyakurels' eldest son was unpersuasive evidence of persecution, and then said that the BIA "share[d] in the [IJ]'s determination that *viewed individually or cumulatively*, [the Pyakurels'] experiences in Nepal were not severe enough to meet the standard for persecution." R. at 4 (emphasis added). Looking at the IJ's more detailed opinion addressing each of these encounters with the Maoists—as we may because the BIA referenced and relied upon the IJ's opinion throughout its brief order, *Sarr*, 474 F.3d at 790—we are convinced that the BIA considered all asserted evidence of persecution.

In his effort to satisfy the asylum conditions, Pyakurel tries to favorably compare his experiences with the Maoists to the experiences endured by successful asylum applicants. But his cited cases, most unpublished, involved more severe encounters with government groups or did not speak to the past-persecution issue at all. *See Maharjan v. Holder*, 418 F. App'x 658, 659–60 (9th Cir. 2011) (unpublished) (finding past persecution where asylum applicant was present in room when political associate was assassinated and applicant was threatened with his life); *Basnet v. Gonzales*, 168 F. App'x 278, 284 (10th Cir. 2006) (unpublished) (concluding that the BIA had failed to consider certain evidence and remanding for refugee-status determination). His arguments on appeal therefore fail to convince us that the record evidence would compel a reasonable adjudicator to find past persecution.

Because Pyakurel failed to show past persecution, we neither presume on his behalf a well-founded fear of future persecution nor consider whether the past

9

persecution was so severe that he need not show a well-founded fear of future persecution. *See Karki*, 715 F.3d at 801.

## 2. *Well-Founded Fear of Future Persecution*

Absent a showing of past persecution, Pyakurel can establish refugee status only by demonstrating a well-founded fear of future persecution. *See id.* "For a fear of future persecution to be well-founded, it must be both 'subjectively genuine and objectively reasonable.'" *Ritonga v. Holder*, 633 F.3d 971, 976 (10th Cir. 2011) (quoting *Tulengkey v. Gonzales*, 425 F.3d 1277, 1281 (10th Cir. 2005)). In the asylum context, fear is objectively well-founded if: (1) the applicant may be singled out for persecution upon returning to his country of origin, or (2) his country has a pattern or practice of persecuting a group of people similarly situated to the applicant on account of a protected ground. *Id.* For the reasons stated below, substantial evidence supports the BIA's determination that Pyakurel failed to demonstrate a well-founded fear of future persecution. Pyakurel's evidence and arguments on appeal would not compel a reasonable factfinder to conclude otherwise.

The BIA primarily based its determination that Pyakurel had failed to show a well-founded fear of persecution on two grounds. First, both the BIA and IJ found Pyakurel's assertion that he was "blacklisted" speculative and therefore did not credit the assertion in considering whether he had a well-founded fear of future persecution. R. at 4, 96. Second, and more importantly, although the BIA credited Pyakurel's testimony that the Maoists had recruited numerous artists to their cause, it found that he had failed to demonstrate a pattern or practice of *persecuting* artists. Pyakurel

10

argues on appeal that the BIA discounted evidence in the record "concerning potentially coercive recruitment of other famous Nepalese artists by the Maoists," but refers us to two news stories that are devoid of evidence of persecution. Pet'r's Opening Br. 29–30. In the face of such scant evidence of persecution, we cannot say that a reasonable factfinder would have been compelled to conclude that Pyakurel had established a well-founded fear of future persecution. Given our deferential standard of review of immigration decisions, we affirm the BIA order affirming the IJ's denial of Pyakurel's asylum application.[3]

Because we find that Pyakurel has failed to satisfy the burden of proof for asylum, he necessarily has failed to meet the more stringent burden of proof for withholding of removal. *See Rodas-Orellana v. Holder*, 780 F.3d 982, 987 (10th Cir. 2015) ("For withholding, an applicant must prove a clear probability of persecution on account of a protected ground." (quotation marks omitted)); *Yuk v. Ashcroft*, 355 F.3d 1222, 1236 (10th Cir. 2004) ("Because petitioners failed to meet the lower standard of showing entitlement to asylum, the IJ correctly denied their application for withholding of removal.").

## C. Convention Against Torture

Pyakurel also seeks review of the BIA's denial of his CAT claim. Contrary to the government's contention that Pyakurel failed to exhaust his administrative remedies on this claim by not arguing the issue before the BIA, the BIA order

---

[3] Because we affirm the BIA's persecution determination, we need not reach the issue of whether the Maoists targeted Pyakurel on account of a protected ground, such as his political opinion or membership in a social group.

specifically affirmed the IJ's CAT decision, so we may exercise jurisdiction. *Sidabutar v. Gonzales*, 503 F.3d 1116, 1121 (10th Cir. 2007) (explaining that, to exhaust an issue, an alien must present the issue to the BIA *or* the BIA must actually decide the issue). Despite having exhausted his administrative remedies, however, Pyakurel waived the issue of protection under the CAT because he failed to argue the issue on appeal. *See Krastev*, 292 F.3d at 1280 ("Issues not raised on appeal are deemed to be waived."). Pyakurel mentions the CAT at the beginning of his briefs and in reference to other cases. But he never argues that he qualifies for protection under the CAT legal standard by showing that "it is more likely than not that he . . . would be tortured." 8 C.F.R. § 1208.16(c)(2). Pyakurel has failed to even state or tie any evidence to the CAT standard, thus waiving the issue. *See Artur v. Holder*, 572 F. App'x 592, 596–97 (10th Cir. 2014) (unpublished) (finding petitioner waived CAT claim on appeal where petitioner set out CAT legal standard but failed to tie record evidence to standard).

## IV. CONCLUSION

For the foregoing reasons, we deny the petition for review of the BIA order affirming the IJ's denial of Pyakurel's application for asylum, withholding of removal, and protection under the CAT.

Entered for the Court

Gregory A. Phillips
Circuit Judge

12